# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00095-CR

**Charles G. Villarreal, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT
## NO. CR2013-067, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## O P I N I O N

Charles G. Villarreal was charged with aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a) (setting out elements of offense), .021(e) (specifying that offense is first-degree felony). Specifically, the indictment alleged that Villarreal "on or about the 1st day of March, 2008, . . . intentionally or knowingly cause[d] the penetration of the female sexual organ of Crystal Ann [pseudonym]; a child younger than 14 years of age, with [his] finger." Crystal Ann is Villarreal's cousin and is six years younger than Villarreal. At the conclusion of the trial, the jury found Villarreal guilty and imposed a sentence of 16 years' imprisonment. *See id.* § 12.32 (setting out permissible punishment range for first-degree felony). In three issues on appeal, Villarreal asserts that the evidence supporting his conviction is legally insufficient, that the district court erred by failing to grant his motion for a directed verdict, and that the district court erred by admitting evidence of his extraneous bad acts. We will affirm the district court's judgment of conviction.

**DISCUSSION**

**Legal Sufficiency**

On appeal, Villarreal asserts that the evidence presented during trial is legally insufficient to support his conviction. Specifically, Villarreal contends that the evidence is "insufficient to find that abuse occurred when . . . [he] was over the age of 17 and therefore criminally liable for such conduct." When challenging his conviction, Villarreal notes that no charges were brought against him as a juvenile and that he was only charged as an adult. For that reason, Villarreal insists that "he could only be convicted of any abuse that occurred after his 17th birthday" but that Crystal Ann's "testimony focused on acts that occurred when [Villarreal] was a juvenile." *See* Tex. Penal Code § 8.07(b) (providing, with certain exceptions, that unless juvenile court waives jurisdiction and certifies individual for criminal prosecution, "a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age").

As set out above, Villarreal was charged with aggravated sexual assault of a child. Under the Penal Code, an individual commits that offense if he "intentionally or knowingly . . . causes the penetration of the . . . sexual organ of a child by any means" and if "the victim is younger than 14 years of age." *Id.* § 22.021(a)(1)(B)(i), (a)(2)(B). Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover,

2

appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added). Moreover, "[t]he testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault." *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd); *see also* Tex. Code Crim. Proc. art. 38.07 (providing that conviction for sexual offense is supportable on uncorroborated testimony of victim if victim informed another person of offense within one year of offense but excusing that requirement if victim was "17 years of age or younger").

During the trial, Crystal Ann testified that she moved into a home with her family when she was six years old and later moved into another home with her family when she was ten or eleven years old. In her testimony, Crystal Ann explained that Villarreal lived with her family for several years at the first home and that he moved with them to the second home. When discussing the time that Villarreal lived with her at both houses, she said that he repeatedly sexually abused her. More specifically regarding the first home, Crystal Ann testified that on multiple occasions, Villarrreal "put his fingers inside of my vagina," that he "forced me to have sex with him" by forcing "his penis into my vagina" on more than three occasions, that Villarreal also put his penis into "my

3

mouth," and that Villarreal grabbed her hand and made her stroke his penis. When describing these incidents, Crystal Ann stated that she sometimes told him to stop and that on other times, she did not say anything. Similarly, Crystal Ann testified that when her family moved to the second home, Villarreal on multiple occasions put his fingers inside her vagina and raped her by putting his penis inside her vagina. In addition, she testified that Villarreal performed these acts throughout the whole time that he was living with her family at the second home and that Villarreal moved out of the second home approximately one month after he celebrated his eighteenth birthday at their house. When describing the number of times that those assaults occurred at the second home, she specified that they happened "[a] lot," that it was more than five times, that she was "not sure" if it was more than ten times, and that the assaults occurred approximately once a month until he moved out. Furthermore, Crystal Ann testified that the abuse stopped after Villarreal moved out of the second house and that although she could not remember when the last assault occurred, the assault occurred when she was "[p]robably about 11" years old.

After Crystal Ann finished her testimony, her mother, E.Z., testified that Villarreal lived with them at both homes and that he moved out after he turned eighteen years old. Moreover, E.Z. explained that when the family was living at the first home, Crystal Ann started experiencing nightmares and would often ask to sleep in the bedroom with her and her husband and would try to bring her younger sister into the room as well. Furthermore, E.Z. stated that around the time that the family moved into the second home, she noticed a change in the relationship between Crystal Ann and Villarreal. In particular, she testified that Crystal Ann no longer wanted to be around Villarreal and asked her why he was living with them. E.Z. also explained that when they moved to the

4

second home, Crystal Ann was "always covered up, never wanted to do anything, just be with her little sister." When describing her daughter's demeanor, E.Z. said that Crystal Ann was depressed. Furthermore, she recalled that she did not learn about any allegations of sexual abuse until after Villarreal moved out. Regarding how she learned of the alleged abuse, E.Z. explained that her other daughter called her and said that Crystal Ann was "just crying and crying and crying and she wouldn't come out of the bathroom." Moreover, E.Z. revealed that she tried to get Crystal Ann to explain what was wrong but that Crystal Ann would not talk about it. In addition, she testified that when she learned what had happened between Crystal Ann and Villarreal, she went to the police and filed a report.

During the trial, Detective David Schroeder testified that he interviewed Villarreal after a complaint was made to the police and that during the interview, Villarreal stated that he could not remember if he had abused Crystal Ann because he was using drugs and alcohol at that point in his life. Detective Schroeder also explained that Villarreal never denied the allegations. Moreover, Detective Schroeder mentioned that Villarreal stated that if he committed the acts that Crystal Ann alleged, he did not do them on purpose. A recording of the interview was played during Detective Schroeder's testimony. Initially on the recording, Villarreal denied the accusations generally and asserted that it would not have been possible for that to have happened while he was living at either home. However, later in the interview, Villarreal stated that he does not remember any of the events, that he was often drunk or high when he was living with Crystal Ann and her family, that he did not like that part of his life, that he was adamant that he did not do anything on purpose, and that if he hurt her on accident, he was sorry.

5

Given our standard of review for legal-sufficiency challenges and in light of all of the evidence previously summarized as well as the reasonable inferences that the jury could have made from that evidence, particularly from Crystal Ann's testimony establishing a pattern of behavior over a period of years, describing multiple instances of Villarreal inserting his fingers into her vagina after the family moved into the second home, explaining that the assaults occurred regularly while Villarreal lived with them, stating that the assaults occurred about once a month up until the time the time that Villarreal moved out after turning eighteen years old, establishing that Villarreal is six years older than Crystal Ann, and relating that the assaults continued until Crystal Ann was eleven years old, we conclude that the evidence is legally sufficient to support the jury's determination that the assault alleged in the indictment occurred after Villarreal turned seventeen years old. *See* Tex. Code Crim. Proc. art. 38.37, § 2(b) (explaining that evidence of other sexual crimes or acts committed by defendant may be considered "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character"); Tex. R. Evid. 404(b)(2) (providing that evidence of other crimes or acts may be used to prove, among other things, intent or absence of mistake). Accordingly, we overrule this issue on appeal.

**Directed Verdict**

In a related issue on appeal, Villarreal asserts that the district court erred by failing to grant his motion for a directed verdict. When presenting this challenge, Villarreal again asserts that there was no evidence that he "was over 17 when the abuse occurred and therefore criminally liable for his actions." However, as set forth above, we believe that legally sufficient evidence was presented supporting the jury's determination that Villarreal was seventeen years or older when the

6

alleged offense occurred. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (explaining that courts treat alleged errors regarding denials of motions for directed verdicts as challenges to legal sufficiency of evidence); *Grayson v. State*, 82 S.W.3d 357, 358 (Tex. App.—Austin 2001, no pet.) (same). Accordingly, we overrule this issue on appeal.

**Admission of Evidence Regarding Other Alleged Instances of Sexual Assault**

In his last issue on appeal, Villarreal contends that the district court erred by admitting evidence regarding alleged extraneous instances of sexual assault. In particular, Villarreal contends that it was error to allow in the testimony of Crystal Ann regarding sexual assaults other than the one at issue in this case that he allegedly committed against her because he did not receive sufficient notice of the State's intention to use that evidence.

As support for this issue, Villarreal principally relies on article 38.37 of the Code of Criminal Procedure and on recent amendments that were made to that provision. *See* Tex. Code Crim. Proc. art. 38.37. In both the prior and the current version, the statute provides that, notwithstanding Rules of Evidence 404 and 405, for certain offenses, including aggravated sexual assault of a child, "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." *Id.* art. 38.37, § 1(a)(1)(B), (b). In the amendments, the legislature added a provision providing that, notwithstanding Rules of Evidence 404 and 405, "evidence that the defendant has committed a separate offense described" by the provision, including aggravated sexual assault, "may be admitted in the trial of an alleged offense" similarly described

7

by the provision "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* § 2(a)(1)(E), (b). However, the amendments also added the requirements that the State "shall give the defendant notice of the state's intent to introduce" the evidence in the case in chief "not later than the 30th day before the date of the defendant's trial" and that before this type of evidence is admitted, the trial court must "conduct a hearing out of the presence of the jury" for the purpose of determining whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." *Id.* §§ 2-a, 3. The prior version of the statute only required the State to provide notice regarding its intention to use evidence concerning extraneous crimes committed by the defendant if the defendant made a request for notice. *See* Act of May 28, 1995, 74th Leg., R.S., ch. 318, § 48, 1995 Tex. Gen. Laws 2734, 2748-49, *amended by* Act of May 24, 2005, 79th Leg., R.S., ch. 728, § 4.004, 2005 Tex. Gen. Laws 2188, 2192, *amended by* Act of April 7, 2011, 82d Leg., R.S., ch. 1, § 2.08, 2011 Tex. Gen. Laws 1, 6 (current version at Tex. Code Crim. Proc. art. 38.37); *see also Lopez v. State*, No. 05-13-01137-CR, 2015 Tex. App. LEXIS 955, at *2 n. 2 (Tex. App.—Dallas Feb. 2, 2015, pet. ref'd) (mem. op.) (explaining that amendment removed requirement that defendant request notice).

In light of the fact that the current statute now obligates the trial court to conduct a hearing to consider the adequacy of the evidence, requires the State to provide notice of its intent to use the evidence 30 days before trial without a request by the defendant, and expands the permissible uses of the evidence to include establishing the character of the defendant, Villarreal insists that the 30-day notice requirement *must* be strictly complied with. *See* Tex. Code Crim. Proc. art. 38.37,

8

§ 3.  Moreover, Villarreal asserts that he was not given the required notice.  Although Villarreal acknowledges that the State did provide notice months before trial of its intent to use evidence of extraneous bad acts, he highlights that the notice did not explain that the evidence would be used to establish character or character conformity as permitted under the new version of article 38.37[1]; on the contrary, Villarreal notes that the notice provided that the State intended to offer the evidence under Rules of Evidence 404(b) and 609(f) and subsection 3(a)(5) of article 38.22 and subsection 3(g) of article 37.07 of the Code of Criminal Procedure but asserts that those provisions do not authorize the evidence to be used to show character or character conformity, particularly during the guilt or innocence portion of the trial.  *See* Tex. R. Evid. 404(b) (prohibiting evidence of crime or bad act to prove person's character to show action in conformity with character but allowing in that evidence for other purposes, including establishing intent, motive, or absence of mistake), 609(f) (allowing evidence of prior conviction to be used to attack witness's credibility); Tex. Code Crim. Proc. arts. 38.22, § 3(a)(5) (requiring State to provide copy of recording of prior statement made by defendant during custodial interrogation before statement may be admitted against him), 37.07, § 3 (allowing State to introduce during punishment phase evidence of extraneous crimes or bad acts that have not resulted in final conviction); *see also Hitt v. State*, 53 S.W.3d 697, 704-05 (Tex. App.—Austin 2001, pet. ref'd) (explaining interplay between Rules of Evidence and evidentiary statutes and how prior version of article 38.37 superseded requirements of various rules in certain

---

[1] The body of the notice explains that "[t]he State hereby gives notice in advance of trial of its intent to introduce evidence of the attached extraneous crimes conduct, convictions and bad acts as described by date and County in any of the attached material.  In addition, each and every individual identified in the attached materials may be called as a witness for the State."

9

sexual-abuse cases). Moreover, Villarreal insists that a proper notice must reference not only the evidence that will be offered but must also set out the purpose for which the evidence will be introduced.[2]

"[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). "A trial court does not abuse its discretion if its decision falls within the 'zone of reasonable disagreement.'" *Beam v. State*, 447 S.W.3d 401, 403 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). "If the trial court's decision on the admission of evidence is supported by the record, there is no abuse of discretion, and the trial court will not be reversed." *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd). Reviewing courts should not substitute their judgment for that of the trial court. *Id.*

During the hearing before the district court regarding whether the evidence of other instances of sexual assault would be sufficient to allow the jury to conclude beyond a reasonable doubt that Villarreal committed those acts, *see* Tex. Code Crim. Proc. art. 38.37, § 2-a, Villarreal presented the same arguments that he presents on appeal. As with his arguments on appeal, Villarreal did not argue before the district court that he did not actually receive notice of an intent to use

---

[2] As a preliminary matter, we note that it is not entirely clear that this issue was preserved for appeal because it does not appear from the record that Villarreal asked for a continuance regarding the allegedly inadequate notice. *See Martin v. State*, 176 S.W.3d 887, 900-01 (Tex. App.—Fort Worth 2005, no pet.) (determining that defendant "waived any complaint that he was surprised by the State's notice" when he did not request continuance). For the sake of argument and in the interests of justice, we will assume that this issue was preserved for appeal.

evidence regarding those acts, nor did Villarreal argue that he was unaware of the alleged acts at issue. On the contrary, he argued that the State's notice did not comply with the 30-day requirement from the recently amended article 38.37 and that the statutes and rules listed in the State's notice do not allow evidence of extraneous acts to be used to establish character or character conformity during the guilt or innocence portion of the trial. *See id.* § 3; *cf. Hayden v. State*, 66 S.W.3d 269, 272-73 (Tex. Crim. App. 2001) (noting when determining that trial court did not abuse its discretion that defendant did not claim that he did not receive actual notice of State's intent to use evidence and instead simply asserted that notice did not comply with provisions of Rule 404(b)).

In response, the State argued that its notice did not include a reference to article 38.37 because the recent amendments to that provision allowing for the use of the type of evidence at issue for character purposes became effective a few months after the notice was sent out. Moreover, the State argued that one of the rules listed in its notice, Rule 404, allows evidence of prior bad acts during the guilt or innocence portion of the trial as well as the punishment phase. In addition, the State asserted that months before the trial, it provided Villarreal with copies of evidence that it obtained regarding the other assaults, including the offense report detailing the other acts, a summary of Crystal Ann's statements in an interview before the Children's Advocacy Center, and videos of interviews of Villarreal and potential witnesses.

Moreover, the State mentioned that "as an extra precaution," it provided Villarreal with an additional notice five days before the trial started setting out the State's intent to introduce extraneous offenses, crimes, wrongs, and bad acts. The amended notice specifically mentioned article 38.37 and also listed the particular extraneous sexual assaults allegedly committed by

11

Villarreal against Crystal Ann that the State planned to introduce during trial. In addition, the State noted that around the same time that the revised notice was sent to Villarreal, Villarreal filed a motion to suppress regarding any evidence concerning his alleged abuse of Crystal Ann prior to his seventeenth birthday. *Cf. Dusek v. State*, 978 S.W.2d 129, 136 (Tex. App.—Austin 1998, pet. ref'd) (concluding that record showed that defendant was given notice required under Rule 404(b) because he filed motion seeking to suppress evidence at issue and showing knowledge of evidence as well as State's intent to use it one week before trial).

After listening to the parties' arguments, the district court determined that it would allow in the evidence concerning the other sexual assaults. When explaining its ruling, the district court stated that although the prior notice did not list article 38.37, the prior notice was given to Villarreal months before the trial started and that, therefore, Villarreal "was on actual notice of the State's general intent to introduce pursuant, at the very least, 404(b) and other things." However, the district court also limited the State's ability to introduce evidence "to those acts that were described in the notice in excess of 30 days ago." Specifically, the district court prohibited the State from introducing evidence regarding an additional allegation listed in the amended notice that Villarreal penetrated Crystal Ann's anus with his penis.

Unquestionably, the original notice of intent to use other offenses that the State provided to Villarreal did not reference article 38.37; however, Villarreal has referred to no authority and we are not aware of any authority requiring the State to specifically list in its notice pertaining to evidence of extraneous offenses the statutes or rules under which that evidence will be introduced. Even assuming for the sake of argument that the State's notice must provide the type of notice

12

suggested by Villarreal, under the unique circumstances of this case, including the fact that the new law became effective after the original notice was provided to Villarreal, we would not be able to conclude that the district court abused its discretion by allowing in the evidence at issue during the guilt or innocence portion of the trial. *See Webb v. State*, 36 S.W.3d 164, 178 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (explaining that reasonableness of notice under other provisions depends on circumstances of case); *cf. Scott v. State*, 57 S.W.3d 476, 481-83 (Tex. App.—Waco 2001, pet. ref'd) (determining that although notice was only received six days before trial, "under the unique facts presented" defense counsel was not surprised or disadvantaged because offenses were going to be tried together and only became extraneous when State decided not to prosecute those crimes). The purpose of requiring the State to provide notice regarding its intent to use evidence of other crimes is to prevent the defense from being surprised, *cf. Hayden*, 66 S.W.3d at 271 (discussing Rules of Evidence), and to allow the "defendant adequate time to prepare for the State's introduction of the extraneous offenses at trial," *cf. Hernandez v. State*, 914 S.W.2d 226, 234 (Tex. App.—Waco 1996, no pet.) (describing purpose of notice under Rule 404). As set out above, Villarreal was provided notice months before the trial started regarding the State's intent to use evidence of other assaults committed by Villarreal against Crystal Ann. Moreover, that notice specified that the State would be seeking to introduce the evidence under rules and statutes authorizing, albeit for limited purposes, use of that type of evidence during the guilt or innocence phase of the trial or the punishment phase. Perhaps most significantly, the notice explained that the State intended to use the evidence under Rule of Evidence 404(b), which allows evidence of other crimes or bad acts to be admitted for the purpose of establishing, among other things, "motive, opportunity, intent,

13

preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). Accordingly, months before the trial began, Villarreal was on notice that he needed to marshal a defense against the use of this type of evidence. Moreover, five days before trial, the State amended its notice to include a reference to article 38.37 and to set out more specifically the exact extraneous crimes that the State intended to introduce during trial.[3] In addition, the district court expressly prohibited the State from introducing evidence regarding an additional allegation that was listed in the amended notice. Furthermore, the lack of surprise to Villarreal is further evidenced by the fact that his trial attorney thoroughly cross-examined Crystal Ann regarding the other instances of alleged abuse.

Even assuming that the district court did abuse its discretion by admitting the evidence of other assaults, we would be unable to conclude that Villarreal was harmed by that error. Under the Rules of Appellate Procedure, a non-constitutional error does not provide grounds for reversal unless it affects the defendant's substantial rights. Tex. R. App. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A substantial right is not affected "when, after examining the record as a whole, the reviewing court has a fair assurance that the error did not influence the jury or had but a slight effect." *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). As evidenced by the record and by his brief, Villarreal is not challenging the admissibility of the evidence itself and is instead asserting that the notice regarding the State's use of that evidence was insufficient. In these circumstances, reviewing courts "look only at the harm that may have been

---

[3] The amended notice also states that before the notice was sent, Villarreal watched the videos of Crystal Ann's interviews at the Child Advocacy Center in which she chronicled the abuse from when she was seven years old until Villarreal moved out of the home that she was living in.

14

caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense." *Id.*

Villarreal asserts that he was harmed because he was unprepared to defend against the use of the evidence to establish his character during the guilt or innocence portion of the trial. As mentioned above, Villarreal contends that the notice that the State gave to him regarding the prior offenses did not list article 38.37 and instead listed statutory provisions and Rules of Evidence that would not have allowed the State to use evidence of extraneous acts during the guilt or innocence phase to establish his character. Accordingly, Villarreal insists that on the day of trial, he did not know that the State's case rested mostly on prior acts allegedly committed by him and was unprepared to defend himself against those accusations.

Although Villarreal asserts that he was harmed because he was unprepared to defend against the use of the allegations of extraneous offenses to establish his character and his actions in conformity with that character, as summarized above, Villarreal was given notice of the State's intent to use that evidence months before the trial started, and it is hard to imagine how his defense against the use of the evidence for character purposes would have differed from his defense against the State's use of that evidence for the purposes identified in Rule 404(b) or for punishment purposes. *Cf. Hernandez v. State*, 176 S.W.3d 821, 826 (Tex. Crim. App. 2005) (noting that defendant "failed to make any showing of how his defense strategy might have been different had the State explicitly notified him" that it intended to use evidence at issue). Moreover, Villarreal had the opportunity to cross-examine Crystal Ann and E.Z. during trial regarding the alleged misconduct and regarding the time that Villarreal lived with them, and Villarreal was also able to cross-examine them during the

hearing held outside the presence of the jury for the purpose of determining whether evidence of extraneous offenses would be admitted. Furthermore, the record reveals that Villarreal's strategy was to undermine Crystal Ann's testimony by challenging her ability to recall or explain when the alleged misconduct occurred. More specifically, Villarreal repeatedly asserted throughout the trial that any allegation of misconduct that occurred before he turned seventeen years old could not serve as the basis for a conviction in this case and urged that the State's evidence failed to establish that any assault occurred after he turned seventeen. Accordingly, assuming there was error, we would conclude that any "error did not influence the jury or had but slight effect." *See McDonald*, 179 S.W.3d at 578-79.

For all of these reasons, we overrule Villarreal's last issue on appeal.

## CONCLUSION

Having overruled all of Villarreal's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   July 17, 2015

Publish

16