

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-15-00018-CR

LEWIS EDWARD CAMPBELL                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY
### TRIAL COURT NO. 52,792-A

----------

## MEMORANDUM OPINION[1]

----------

Appellant Lewis Edward Campbell appeals his convictions for three counts of aggravated sexual assault of a child, one count of attempted aggravated sexual assault of a child, and one count of indecency with a child by sexual contact. *See* Tex. Penal Code Ann. §§ 15.01, 21.11 (West 2011), § 22.021 (West Supp. 2015). In a single issue, divided into several subparts, Campbell

---

[1]*See* Tex. R. App. P. 47.4.

argues that the trial court erred by instructing the jury that it could consider evidence of extraneous offenses for character-conformity purposes. We will affirm.

In February 2012, nine-year-old S.C. told a counselor at her elementary school in Wichita Falls that her father, Campbell, had sexually abused her. The counselor reported S.C.'s graphic disclosures to CPS, and at a forensic interview that followed, S.C. revealed the "very nasty things" that Campbell had done to her multiple times. Authorities initiated an investigation into S.C.'s claims against Campbell, whose work required him to be away from home for lengthy periods of time, but no warrant issued for his arrest. CPS allowed S.C. to remain in the care of her stepmother, having instructed her that Campbell was not allowed in the house, but he came over anyway, according to S.C.

CPS received a number of other referrals regarding S.C. after her initial disclosures. In February 2012, S.C. reported that Campbell had entered her room one night but that he had left when she screamed, and in May 2012, S.C. came to school with a black eye and said that Campbell had hit her.

In June or July 2012, Campbell, S.C., and S.C.'s stepmother and younger sister moved to Tennessee to "get[] away from CPS." However, soon thereafter, in August 2012, CPS in Tennessee received a referral regarding S.C. S.C. disclosed that Campbell had sexually abused her, and CPS removed S.C. and her sister from Campbell's home. A sexual assault exam performed on S.C.

2

revealed several things that were "cause for concern and suspicio[n] for abuse." When the CPS investigator spoke on the phone with Campbell, he neither voiced any concern for S.C. nor asked any questions about her well-being. Instead, Campbell explained that he had merely removed S.C.'s clothes and treated her like a baby because she had bad hygiene.

Authorities in Wichita Falls arrested Campbell in October 2012. A grand jury later indicted him for five offenses that allegedly occurred in Wichita County in January and February 2012.[2] At trial, several witnesses testified that S.C. had a black eye in May 2012, and after a preliminary hearing outside the presence of the jury, a CPS worker from Tennessee testified about the disclosures that S.C. had made involving Campbell following the referral to CPS in Tennessee. Paragraph 13 of the court's charge at the guilt phase instructed the jury as follows:

> If you find that there is evidence in this case of the defendant having committed acts other than those for which he is now on trial, and you find that evidence to be true beyond a reasonable doubt,

___

[2]The indictment alleged that Campbell had committed aggravated sexual assault of a child by intentionally or knowingly causing (1) S.C.'s mouth to come into contact with Campbell's sexual organ, (2) S.C.'s sexual organ to contact Campbell's mouth, and (3) the penetration of S.C.'s sexual organ with Campbell's finger. The indictment also alleged that Campbell had committed attempted aggravated sexual assault of a child by "making [S.C.] bend over and/or trying to insert [his] sexual organ into the anus of [S.C.] and/or putting [his] sexual organ against the butt of" S.C. Lastly, the indictment alleged that Campbell had committed indecency with a child by sexual contact by intentionally or knowingly, and with the intent to arouse or gratify his sexual desire, causing S.C. to touch his genitals.

3

then you can consider that evidence for the purposes of showing the state of mind of the defendant and the child, and/or the previous and subsequent relationship between the defendant and the child, *and/or the character of the defendant and acts performed in conformity with the character of the defendant*, and/or intent, and/or opportunity, and/or lack of mistake, but for no other purposes. [Emphasis added.]

The jury convicted Campbell on each count and assessed his punishment at life imprisonment and a $10,000 fine on each of the aggravated assault convictions and twenty years' confinement and a $10,000 fine for each of the attempted aggravated sexual assault and indecency convictions.

In his only issue, Campbell argues that the trial court erred by instructing the jury in paragraph 13 that it could consider evidence of extraneous offenses to show his character and that he acted in conformity therewith. Campbell acknowledges that section 2 of code of criminal procedure article 38.37 allows evidence of certain extraneous offenses to show "the character of the defendant and acts performed in conformity with the character of the defendant," but he contends that "the conditions required for admissibility [of such extraneous offenses or acts] as set forth in Article 38.37 §§ 2, 2-a, and 3 were not met." Assuming without deciding that these alleged errors are properly analyzed as jury charge errors subject to an *Almanza* analysis, rather than trial errors initially

subject to error-preservation requirements, Campbell's arguments are unpersuasive.[3]

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch*, 357 S.W.3d at 649. If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.*

Section 2(b) of article 38.37 provides as follows:

> (b)    Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Tex. Code. Crim. Proc. Ann. art. 38.37, § 2(b) (West Supp. 2015). Subsection (a)(1) of section 2 includes the offenses of aggravated sexual assault

---

[3]Insofar as Campbell's arguments about notice and a preliminary hearing are not properly analyzed under *Almanza*, we note that Campbell did not assert any objection at trial implicating article 38.37, section 3's notice requirement or article 38.37, section 2-a's preliminary hearing procedure. Therefore, in that case, neither argument was preserved for appellate review. *See* Tex. R. App. P. 33.1(a).

5

of a child and indecency with a child, the same offenses for which Campbell was indicted.[4]  *Id.* art. 38.37, § 2(a)(1)(C), (E).

Campbell argues that the trial court nevertheless erred by including the character-conformity language in paragraph 13 of the charge because the State failed to give notice of its intent to introduce extraneous offense evidence "for the purpose of proving Appellant's character."  In other words, Campbell does not complain that the State's notice failed to identify any particular extraneous offense or act; he only argues that the notice failed to explicitly state that any extraneous offense or act would be introduced for character-conformity purposes.  The record demonstrates that the State noticed Campbell that it intended to introduce extraneous offense evidence or acts for the reasons articulated in rules of evidence 404(b) and 609 and code of criminal procedure article 38.37, section 1 but not section 2—the section that addresses character-conformity evidence.  However, section 3 of article 38.37 requires the State to "give the defendant notice of the state's intent to introduce in the case in chief *evidence* described by Section . . . 2 not later than the 30th day before the date of the defendant's trial."  *Id.* art. 38.37, § 3 (emphasis added).  Thus, the statute requires the State to give the defendant notice of the *evidence* that it intends to use, not the *specific purpose* for which the State intends to offer the evidence.

---

[4]Campbell was also indicted for attempted aggravated sexual assault of a child, and subsection (a)(2) of section 2 covers an attempt to commit an offense described by subsection (a)(1).  Tex. Code Crim. Proc. Ann. art. 38.37, § 2(a)(2).

6

Campbell's argument is contrary to the plain language of section 3, he directs us to no authority to support his reading of the statute, and the record does not indicate that Campbell lacked notice of, or was otherwise surprised by, any particular extraneous offense or act introduced by the State at trial. *See Villarreal v. State*, 470 S.W.3d 168, 175–76 (Tex. App.—Austin 2015, no pet.) ("[Appellant] has referred to no authority and we are not aware of any authority requiring the State to specifically list in its notice pertaining to evidence of extraneous offenses the statutes or rules under which that evidence will be introduced."); *cf. Cole v. State*, 987 S.W.2d 893, 897 (Tex. App.—Fort Worth 1998, pet. ref'd) (analyzing prior version of article 38.37, section 3 and reasoning that "[t]he purpose of the notice requirement is to prevent surprise to the defendant and apprise him of the offenses the State plans to introduce at trial").

Campbell next argues that the trial court erred by including the character-conformity language in paragraph 13 of the charge because no article 38.37, section 2-a preliminary hearing occurred before either S.C. or the sexual assault nurse examiner from Tennessee testified. Section 2-a provides as follows:

> Before evidence described by Section 2 may be introduced, the trial judge must:
>
> (1)    determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
>
> (2)    conduct a hearing out of the presence of the jury for that purpose.

Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a. The trial court did not perform a section 2-a preliminary determination before the testimony of either S.C. or the sexual assault nurse from Tennessee, but it did conduct the hearing before the testimony of Kristen Bohannon, the CPS worker from Tennessee. Bohannon was the outcry witness who testified in detail about the disclosures that S.C. made about Campbell during her forensic interview in Tennessee. Before Bohannon testified, and consistent with section 2-a, the trial court conducted a hearing outside the presence of the jury and explicitly found that "the evidence that will be admitted will be adequate to support a finding by the jury that the Defendant committed the offense beyond a reasonable doubt." The Tennessee extraneous offenses or acts of which Bohannon testified were the same Tennessee extraneous offenses or acts of which S.C. testified.[5] We do not read article 38.37, section 2-a as obligating the trial court to inefficiently conduct duplicative preliminary hearings involving the same extraneous offenses or acts. Accordingly, the trial court complied with article 38.37, section 2-a's preliminary hearing requirement as it pertains to the extraneous offenses or acts allegedly committed by Campbell in Tennessee.

Lastly, Campbell argues that the trial court erred by including the character-conformity language in paragraph 13 of the charge because the

---

[5]The sexual assault nurse concluded that there was "cause for concern and suspicio[n] for abuse" but did not testify about any specific extraneous offenses or acts.

extraneous offense or act that Campbell gave S.C. a black eye is not one of the "separate offense[s]" described by article 38.37, section 2 that may be admitted during trial for character-conformity purposes. Campbell is correct that simple assault is not identified in section 2; however, under section 1, in the prosecution of a defendant under penal code "Chapter 21 (Sexual Offenses)" or "Chapter 22 (Assaultive Offenses)," and if the offense is committed against a child under seventeen years of age, extraneous offenses or acts are admissible to show "the state of mind of the defendant and the child" and "the previous and subsequent relationship between the defendant and the child." *Id.* art. 38.37, § 1(a)(1), (b). Here, the indictment alleged that Campbell had committed offenses against S.C.—a child under fourteen years of age—under either penal code chapter 21 or chapter 22, and in addition to character conformity, paragraph 13 of the charge disjunctively instructed the jury that it could consider extraneous offenses or acts "for the purposes of showing the state of mind of the defendant and the child, and/or the previous and subsequent relationship between the defendant and the child." Therefore, the jury could have properly considered the evidence that Campbell gave S.C. a black eye for the reasons articulated in article 38.37, section 1 instead of for purposes of character conformity. *See Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1068 (1995) ("A jury charge which tracks the language of a particular statute is a proper charge on the statutory issue.").

9

We hold that the trial court did not err by instructing the jury that it could consider evidence of extraneous offenses or acts for character-conformity purposes. *See Kirsch*, 357 S.W.3d at 649. We overrule Campbell's only issue and affirm the trial court's judgments.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: GARDNER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 10, 2015