

## NUMBER 13-23-00554-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**RICARDO ANTONIO RECINOS,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

## ON APPEAL FROM THE 437TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Benavides**

A jury convicted appellant Ricardo Antonio Recinos of continuous sexual abuse of a young child, a first-degree felony, and indecency with a child by contact, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11. The jury imposed a sentence of thirty-five years for continuous sexual abuse of a child and a two-year suspended sentence for indecency with a child by contact. By four issues that we have reordered, Recinos argues:

(1) the evidence was legally insufficient; (2–3) the jury charge contained erroneous instructions; and (4) the admission of the complainant's sister's testimony violated article 38.37 of the code of criminal procedure, *see* TEX. CODE CRIM. PROC. ANN. art. 38.37. We affirm.

## I.  BACKGROUND[1]

The indictment for continuous sexual abuse of a young child generally alleged that Recinos committed two or more acts of sexual abuse against B.C. (Bailey)[2] when she was younger than fourteen years of age; namely, that he engaged in sexual contact with Bailey by: (1) touching/penetrating her anus; (2) touching/penetrating her genitals; and (3) causing her to touch his genitals. The indictment for indecency with a child by contact alleged that Recinos touched Bailey's breasts when she was under the age of seventeen.

Trial commenced on October 11, 2023. Bailey, who was nineteen at the time of trial, testified that her stepfather, Recinos, sexually abused both her and her sister, D.C. (Destiny), during their childhood. Destiny was also nineteen at the time of trial and, over the defense's objection, testified about the abuse Recinos committed against her and Bailey, as well.[3] According to Bailey, Recinos began dating her mother, E.R. (Eleanor),

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] We have assigned the pseudonym "Bailey" to the complainant to protect her privacy. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"). To further protect her identity, we will refer to her relatives by pseudonyms as well. *See id.*

[3] Destiny was the final witness to testify during the guilt-innocence phase of trial, which is relevant to our analysis of one of Recinos's issues. However, we have incorporated her testimony throughout this

2

when she was either nine or ten. The couple married in November of 2016, when Bailey was thirteen. Although Bailey and Recinos initially got along, Bailey observed that he started becoming more "aggressive" when she was around the age of ten.

Bailey testified that the first incident of sexual abuse occurred "around Christmas time" at her mother's home in Converse, Texas. Bailey explained that her "sister was asleep," but she was still awake. Recinos grabbed Bailey's hand, made her "touch his penis[,] and basically ma[de] [her] jerk him off." Bailey specified this was "skin to skin" contact. Bailey recounted that "it just felt wet," and she remembered "having something on [her] hand" but "didn't know what it was." Afterward, Bailey told Destiny what happened, who "had something on her hand, too." Destiny described a similar incident and "remember[ed] waking up in the morning and having something in [her] hand and [she] didn't realize what it was." Bailey testified that Recinos made them "grab" his penis frequently, and the first time it happened was when she was "[t]en."

Bailey also recounted that Recinos would sometimes take the girls home early from school "a couple times out of the month." On one specific instance, Bailey remembered that, after he took her home early from school, Recinos took off his pants, although "he was still in his boxers," and he began "dry humping" Bailey. Bailey remembered feeling "[h]is penis" on her "vagina" through her clothing. Bailey testified that she also witnessed Recinos "get on top of [Destiny], dry hump her, and [Bailey] would see her cry." Destiny confirmed that Recinos would "maneuver [their] hips . . . to where [they] could feel his penis" and would "dry hump [them]." Bailey explained that this "dry

_____

background section, rather than at the very end of it, to frame the events in a semi-chronological order.

humping" occurred several times, and that the earliest it happened to her was when she was "[t]en" years old.

The family moved to Colorado when Bailey was around the age of thirteen. Both girls testified that the abuse escalated at this point. Destiny testified that the "touching" occurred "almost every day" while there. On one occasion when Bailey was about thirteen, Recinos provided alcohol to Bailey and Destiny, and told them, "[W]hoever finishes this drink first wins." Bailey became "drunk to the point where [she] couldn't walk." Recinos encouraged the girls "to lay down on the floor," and "that's where [Bailey] remember[ed] him putting his fingers inside of [them], or inside of [her], and just going back and forth." Destiny also remembered "feeling dizzy" and Recinos "put[ting] his fingers inside of [her]" during this incident.

Bailey also testified that "sometimes like playing around [Recinos] would like put his finger up our butt." Bailey specified that "[s]ometimes it would be over and under the clothes," although she denied that there was ever "finger skin to anus" contact while the family still lived in Texas. However, Bailey explained that, even through clothing, "[i]t was deep enough to where we could feel it, where we felt uncomfortable."

Bailey explained that in 2018, she reached out to her aunt via text message, and told her, "[Recinos] is touching us." Bailey's aunt encouraged her to tell her mother. Destiny explained that she discouraged Bailey from reporting the abuse, because Destiny "was scared of what was going to happen." But Bailey testified that she reported the abuse to Eleanor anyway, who proceeded to ask Recinos about it, who, in turn, "den[ied] everything." The following day, Destiny also told Eleanor that Recinos was abusing her.

4

Eleanor called her pastor, Yvette Perez. According to Perez, Eleanor called her "crying" and sounded "desperate." During the call, Eleanor "told [Perez] that the girls told her that something happened with [Recinos]." Perez made a report to law enforcement in Colorado.

Both girls testified that they felt pressured by Recinos and Eleanor not to discuss the abuse with investigators during this period. Accordingly, Bailey and Destiny both denied the abuse to Colorado investigators. Destiny specified that she "didn't say it didn't happen to [her] sister," she "just denied that it happened to [her]."

When Bailey was sixteen, she, her siblings, and Eleanor, moved back to Converse, Texas. A couple months later, after the Colorado investigation closed and Recinos was discharged from the military, he joined the family in Texas. Eleanor testified that she noticed her daughters seemed "different" and were "[m]aybe" uncomfortable around Recinos. She also acknowledged that Bailey made a second outcry while in Texas that Recinos "had kind of like put his hand to her breasts," but she found Recinos's explanation that the touching was accidental "believable."

Bailey was upset, "[u]ncomfortable," and felt unsafe sharing a home with Recinos, and eventually she ran away. She stayed with different family members during this time and discussed the abuse with them. Specifically, Bailey testified, "I had told . . . my mom's sister . . . . I told my grandma. I told my whole dad's family. I told friends. I told my counselors. I basically tried to reach out to as many people as I c[ould]." Finally, child protective services and law enforcement in Texas became involved, and because Bailey "wanted [her] sisters to feel safe and . . . wanted them to know they were going to be

5

okay," she told the investigators about the abuse.

William Michael Scogins, although retired at the time of trial, was a detective with the Converse Police Department during Texas law enforcement's investigation into Bailey's final outcry. Detective Scogins spoke to Bailey and several of the people to whom Bailey outcried. According to Detective Scogins, after speaking to some of Bailey's relatives, he learned that Destiny also "talked to a couple of people . . . . concerning what was done to both of them, but she did not want to pursue it. She did not want to say anything."

Detective Judy Avilez, also of the Converse Police Department, constructed a timeline of the abuse based on law enforcement's interviews with Bailey and her relatives. According to Detective Avilez, "most of" the sexual abuse occurred in Colorado, "[b]ut it did begin in Converse." When Bailey was "[a]bout 12 years old," Recinos "put his finger in [Bailey]'s butt." Then, when Bailey was approximately thirteen and the family was still living in Texas, Recinos reportedly "dry humped her." Detective Avilez acknowledged that Destiny did not make an outcry during the Texas investigation.

In fact, until the Monday preceding trial, Destiny had never confirmed that she was abused by Recinos to law enforcement. However, Destiny testified that she told relatives on prior occasions "that it was true, but [she] didn't go into detail."

L.A. (Leslie), the girls' cousin, testified that Destiny confided in her that she was sexually abused by Recinos. According to Leslie, either the week or weekend prior to trial, she and Destiny "spoke about" the sexual abuse, and "[m]aybe a year ago," Destiny also "mentioned" she had experienced similar abuse as Bailey but not did go into detail. Leslie

6

recounted that Destiny never denied that she was also abused, but when Bailey would broach the topic, Destiny "just said she didn't want to talk about it."

The jury found Recinos guilty and imposed the sentences described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Recinos argues the evidence was insufficient to show that he committed two or more acts of sexual abuse during a period that spanned at least thirty days when Bailey was younger than fourteen years old.

### A. Standard of Review & Applicable Law

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). In reviewing the sufficiency of the evidence, we consider all the evidence presented in the light most favorable to the verdict to determine whether the trial court was justified in finding guilt beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

"To obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against a child younger than 14 years of age during a period of at least 30 days' duration." *Ramos v. State*, 636 S.W.3d 646, 651–52 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 21.02(b)). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). "But, the proof must establish 'there is at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse.'" *Perez v. State*, 689 S.W.3d 369, 378 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (quoting *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).

**B.      Analysis**

By his first issue, Recinos argues that the evidence was insufficient to demonstrate that he committed two or more acts of sexual abuse at least thirty days apart against Bailey while she was under the age of fourteen. Recinos cannot be held liable by a Texas court for the acts committed in Colorado, *see Allen v. State*, 620 S.W.3d 915, 921 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 1.04)), and at any point thereafter, Bailey was fourteen or older. Accordingly, we look only to the acts committed before the family moved to Colorado.

Indecency with a child by sexual contact, other than breast-touching, is a predicate offense for continuous sexual abuse of a young child. TEX. PENAL CODE ANN. § 21.02(c)(2). Bailey testified Recinos made her touch his penis with her hand and "dry

hump[ed]" her, which resulted in his penis making contact with her, when she was ten years old. *See id.* § 21.11(c) (providing that touching a child with one's genitals, including "through clothing," is prohibited sexual contact). Additionally, Detective Avilez testified that when Bailey was "[a]bout 12 years old," Recinos reportedly "put his finger in [Bailey]'s butt."[4] Detective Avilez's timeline also indicated that Recinos "dry humped" Bailey when she was about thirteen years old and still living in Texas. Because these incidents necessarily happened more than thirty days after the incidents that occurred when Bailey was ten, and both occurred in Texas while Bailey was younger than fourteen, we conclude that the evidence was sufficient to support Recinos's conviction for continuous sexual abuse of a young child. *See id.* § 21.02(b); TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (providing that the uncorroborated testimony of a child victim alone is sufficient to support a conviction for a sexual offense); *Perez*, 689 S.W.3d at 378.

We overrule Recinos's first issue.

### III.    JURY CHARGE ERROR

By his second and third issues, Recinos argues that the charge erroneously authorized a conviction for continuous sexual abuse of a young child even if the jury did not unanimously agree that two acts of sexual abuse occurred thirty or more days apart.

---

[4] On appeal Recinos appears to take issue with the mechanics of this claim, as he did below, arguing that although Bailey used the term "anus," "her description was not that [Recinos] penetrated or touched her anus—she described touching her buttocks." However, Recinos cites directly to Bailey's testimony, including a portion where she stated unequivocally, "[H]is finger went into my anus with the clothing on is what I said." We do not have any issue with the mechanics of this statement, and clearly, neither did the Legislature since it prohibited such conduct. *See* TEX. PENAL CODE ANN. § 21.11(c)(1) (providing that unlawful "sexual contact" includes "touching through clothing, of the anus").

## A. Applicable Law & Standard of Review

A jury charge must instruct the jurors on the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. "Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (cleaned up); *Perez*, 689 S.W.3d at 379. In a typical jury charge, "[a]bstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations.'" *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)).

"We review jury charge error under a two-pronged test, by looking first to whether the charge is erroneous." *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022). "In examining the charge for possible error, reviewing courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'" *Vasquez*, 389 S.W.3d at 366 (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). "Second, we ask whether Appellant was harmed by the error." *Cyr*, 665 S.W.3d at 556. "If the error was the subject of a timely objection, reversal is required if the error was calculated to injure the rights of the appellant, which means no more than that there must be some harm." *Reed v. State*, 680 S.W.3d 620, 625 (Tex. Crim. App. 2023). "But if there was no proper objection to the error, a reversal will be granted only if the error presents egregious harm, meaning that the appellant did not receive a fair and impartial trial." *Id.* at 625–26.

10

**B.    Analysis**

The jury charge at issue provided:

> With regard to the offense of continuous sexual abuse of a young child . . . , in order to find the defendant guilty of that offense, you are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. However, in order to find the defendant guilty of the offense of continuous sexual abuse of a young child, . . . you must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more of the alleged acts of sexual abuse.

Recinos argues that this language was erroneous, as it does not require the jury to unanimously agree that two acts of sexual abuse were "separated by at least 29 days." As support, Recinos cites *Smith v. State.* 397 S.W.3d 765 (Tex. App.—San Antonio 2013, no pet.). However, *Smith* is inapposite. In that case, it was the trial court's failure to include the very language Recinos now complains was insufficient that the San Antonio Court of Appeals held was erroneous. *See id.* at 770.

Although we are unable to find any precedential authority from our sister court on this issue, in at least two unpublished cases, the San Antonio Court of Appeals has held that similar language in a jury charge was not erroneous. *Knowles v. State*, No. 04-12-00180-CR, 2013 WL 1149063, at *3–5 (Tex. App.—San Antonio Mar. 20, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that "the language 'during a period that is 30 or more days in duration'" in a jury charge was not erroneous); *Quintero v. State*, No. 04-13-00596-CR, 2015 WL 1914595, at *2 (Tex. App.—San Antonio Apr. 15, 2015, pet. ref'd) (mem. op., not designated for publication) (following *Knowles* on this issue). We note that, although this issue appears to be unsettled, such a holding is consistent with the majority of intermediate courts of appeals that have ruled on it. *See, e.g., Poor v.*

11

*State*, No. 11-22-00221-CR, 2024 WL 3446969, at *4 (Tex. App.—Eastland July 18, 2024, no pet. h.); *Perez*, 689 S.W.3d at 380; *Lewis v. State*, No. 14-21-00691-CR, 2023 WL 4873306, at *7–8 (Tex. App.—Houston [14th Dist.] Aug. 1, 2023, pet. ref'd); *Turner v. State*, 626 S.W.3d 88, 96 (Tex. App.—Dallas 2021, no pet.). *But see Turner v. State*, 573 S.W.3d 455, 462 (Tex. App.—Amarillo 2019, no pet.); *Lewis v. State*, No. 06-21-00021-CR, 2022 WL 630288, at *6 (Tex. App.—Texarkana Mar. 4, 2022, pet. ref'd) (mem. op., not designated for publication).

Moreover, the jury charge language in question tracks the applicable statute. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of a trial judge."). Accordingly, we conclude that the charge in question is not erroneous, and we overrule Recinos's second and third issues.

## IV.    ARTICLE 38.37

By his final issue, Recinos argues that the trial court erred by admitting Destiny's testimony, as the State failed to provide at least thirty days' notice of its anticipated use. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37.

## A.    Applicable Law & Standard of Review

Generally, extraneous bad acts are not admissible during the guilt phase of a trial to prove a defendant's character and to show that the defendant acted in conformity with that character on a particular occasion. TEX. R. EVID. 404(b)(1). However, Article 38.37 is an evidentiary rule applicable to certain types of sexual abuse cases involving children that permits the introduction of extraneous sexual abuse offense evidence "for any

12

bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant" if its conditions are met. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). If the State intends to introduce such evidence, it must provide notice "not later than the 30th day before the date of the defendant's trial." *Id.* § 3. The purpose of Article 38.37's notice requirement "is to prevent the defense from being surprised" and "to allow the 'defendant adequate time to prepare for the State's introduction of the extraneous offenses at trial.'" *Villarreal v. State*, 470 S.W.3d 176, (Tex. App.—Austin 2015, no pet.) (quoting *Hernandez v. State*, 914 S.W.2d 226, 234 (Tex. App.—Waco 1996, no pet.)).

We review a trial court's decision to admit or exclude evidence under and abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Id.* "Error in admitting evidence in violation of the notice provision of Article 38.37 is non-constitutional error." *Lara v. State*, 513 S.W.3d 135, 142–43 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Pena v. State*, 554 S.W.3d 242, 248 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). "Thus, we will not conclude an error is harmful unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Lara*, 513 S.W.3d at 143.

## B. Procedural Background

On October 9, 2023, the State amended its previously filed notice of extraneous offense evidence to also inform Recinos that it planned to introduce evidence concerning the sexual abuse of Destiny. As noted above, trial commenced on October 11, 2023,

meaning that the State's notice fell well short of Article 38.37's thirty-day notice requirement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3.

Destiny was called as the State's final witness and, without objection, the following line of questioning transpired:

Q. Earlier when I asked about . . . Recinos coming into the picture, you said [your relationship with him was] good at first.

A. Yes.

Q. At some point did that change?

A. Yes, it did. Whenever he started touching us.

Q. Did you ever witness him touching your sister inappropriately?

A. Yes, I was there when it happened.

Q. And what is the first time you remember witnessing something?

A. The first time I remember, he—I can't really recall the first time but . . . [.]

Q. Do you remember where you were living?

A. In [Converse].

Q. Okay. And do you have any idea about how old you were?

A. Ten.

. . . .

Q. And what do you remember about that incident?

A. I remember he grabbed our hand [sic] and he made us put it on his penis or put [Bailey's] hand on his penis.

Q. Okay.

A. He'd maneuver her hips sometimes to—to where he could feel—you

14

could feel that it's hard.

Q.    When he placed his hand—her hand on his penis, you said that was [in Converse]. Do you remember what room that was in?

A.    It was in the living room. We were sleeping on the floor. We were laying on the floor, and he was in the middle.

Q.    He was in between you and [Bailey]?

A.    Yes.

. . . .

Q.    Do you remember when that incident happened, when you saw him put her hand on his penis, do you remember anything else about that evening or that incident?

A.    Yes. It happened to me, too.

Q.    I'm going to stop you real quick.

The State then asked whether the court wanted to conduct an Article 38.37 hearing outside the presence of the jury. *See id.* art. 38.37, § 2-a. During that hearing, Recinos argued that Destiny's testimony was a last-minute "surprise," was "highly prejudicial," and asked that she not be allowed to testify further about these incidents. The State responded that, as soon as it learned what the substance of Destiny's testimony would be, it filed an amended notice. The trial court denied Recinos's request to strike Destiny's testimony but offered him a continuance. Counsel for Recinos responded, "We would not need a continuance at this point, Your Honor," and trial resumed.

**C.    Analysis**

Recinos argues that since the State failed the meet Article 38.37's notice requirement, and since the evidence was emphasized by the State and "was critical . . . to

15

strengthen [Bailey]'s credibility," the trial court's error in admitting Destiny's testimony was harmful. The State argues that Recinos waived this issue because he turned down the trial court's offer of a continuance. We agree. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) ("The failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise."); *see also Escobar v. State*, No. AP-76,571, 2013 WL 6098015, at *22 (Tex. Crim. App. Nov. 20, 2013) (mem. op., not designated for publication) ("Because appellant affirmatively waived the trial court's offer of a continuance, he cannot complain of surprise on appeal."); *Lippert v. State*, No. 04-22-00158-CR, 2023 WL 8607058, at *5 (Tex. App.—San Antonio Dec. 13, 2023, no pet.) (mem. op. not designated for publication) ("When Lippert objected to the admission of the extraneous offense evidence, he did not request a continuance to mitigate the effects of any surprise. Lippert's failure to request a continuance . . . means that the error in overruling his notice objections was not properly preserved for our review.").

However, even if we held that this issue was preserved, we would nonetheless conclude that Recinos was not harmed by any error in admitting Destiny's testimony. Recinos does not argue that Destiny's testimony would be inadmissible even if the State provided the proper thirty-day notice. Rather, he simply argues that the lack of notice rendered the evidence inadmissible. *See Villarreal*, 470 S.W.3d at 177. In these circumstances, we "look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense." *See id.* (quoting *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App.

16

2005)); *Lara*, 513 S.W.3d at 143.

It would not have come as a surprise to Recinos that there were allegations he sexually abused Destiny. Throughout the multi-year investigation, Bailey consistently stated that Recinos abused both her and Destiny. On March 8, 2021, the State filed eight notices of its intent to present outcry statements pursuant to Article 38.072. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. These notices included a narrative summary of what Bailey told other individuals. In six of the notices, Bailey made outcries that concerned both herself and Destiny. *See Lara*, 513 S.W.3d at 143 (concluding that appellant was not harmed by a lack of notice under Article 38.37 where he "admitted he was aware of the additional three incidents of sexual abuse" but "protested only that he was unaware the State planned to introduce such evidence").

Additionally, by the time the State called Destiny as its last witness, the jury had already heard from several witnesses that Destiny was sexually abused by Recinos. Bailey testified about many incidents of sexual abuse involving Destiny. Leslie, the girls' cousin, and Detective Scogins both testified that, although Destiny did not describe the abuse in detail, she had acknowledged to some family members that she had been sexually abused. Perez testified that Eleanor called her upset because "the girls" made an outcry. None of this testimony raised any objection from Recinos. Prior to the court's Article 38.37 hearing, Destiny was also able to testify, without objection, that her relationship with Recinos soured "[w]henever he started touching [them]," stating, "[Recinos] grabbed our hand [sic] and he made us put it on his penis." Whatever harm was caused by the addition of more testimony of a similar nature, it would not have had

a "substantial" impact on the jury's verdict. *See id.*; *see also Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("[A] party must object each time the inadmissible evidence is offered or obtain a running objection. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." (internal footnote omitted)).[5]

Based on our review of the record, we conclude that Recinos was not harmed by any error caused by admitting this evidence. *See Lara*, 513 S.W.3d at 143. We overrule his final issue.

**V.   CONCLUSION**

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
29th day of August, 2024.

---

[5] Further, we note that Article 38.37 applies to "evidence that the defendant has committed a *separate* offense," not evidence that the defendant committed the offense for which he is standing trial. TEX. CODE CRIM. PROC. ANN. art. 38.37 (emphasis added). Even if the trial court limited Destiny's testimony to only the abuse her sister suffered, the prejudicial effect Recinos complains of on appeal—that Bailey's credibility was bolstered by Destiny's testimony—would likely still have occurred.