# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00297-CR

**Justin Riordan, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
## NO. D-14-0425-SA, THE HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Justin Riordan of the offense of aggravated sexual assault of a child and assessed his punishment at confinement for ten years in the Texas Department of Criminal Justice. *See* Tex. Penal Code §§ 22.021(a)(1)(B)(i), (2)(B), 12.32. On appeal, appellant challenges the sufficiency of the evidence supporting his conviction and complains about improper jury argument, the trial court's denial of his motion for new trial, the trial court's failure to make findings of fact and conclusions of law, egregiously harmful error in the jury charge, and the admission of expert testimony. We affirm the trial court's judgment of conviction.

# BACKGROUND[1]

The jury heard evidence that in 2014, 13-year-old K.S. spent Valentine's Day weekend with her aunt Sheila,[2] Sheila's husband Jeff, and their daughters, 15-year-old C.R. and 18-year-old Ashlyn, at their home. That Saturday, K.S. met 28-year-old appellant, who was a friend of the family, for the first time. The following Saturday, K.S. again spent time with her aunt's family. On that occasion, several others joined K.S. and the family for a day of barbecuing, drinking, and socializing, including appellant and another family friend, 20-year-old Cole. The evidence showed that everyone at the get together, including the minor children, drank alcohol.[3] The gathering extended into the evening hours, and appellant and Cole spent the night.

The testimony reflected that appellant took K.S., C.R., Cole, and two others "backroading" (driving the country roads) in his truck that evening until Jeff called and told appellant to bring the girls home because they were young and it was getting late. When they returned to the house, at around midnight, Jeff and Ashlyn were in the living room watching TV. Ashlyn was in the recliner seat in the middle of the sectional couch, and Jeff was in separate recliner. Cole and C.R. laid down together on the long part of the sectional couch. K.S. laid down on the shorter

---

[1] In order to protect the identities of the minor children mentioned in this opinion, we refer to the minor children by their initials and refer to the adults by their first names only.

[2] The record reflects that K.S. is not biologically related to Sheila. Sheila's mother raised K.S.'s mother, Jennifer, and Sheila and Jennifer grew up together, but Jennifer was never formally adopted into the family.

[3] It is unclear from the testimony whether Sheila and Jeff knew the minor children were drinking alcohol, or, if they knew, whether they were aware of the amount of alcohol the children consumed. Testimony indicated that, at some point that evening, appellant drove the children to the convenience store and he and another adult male purchased additional alcohol for them.

loveseat side of the couch. Appellant sat in the recliner seat with Ashlyn, on the side where K.S. was laying down. Apparently appellant was flirting with Ashlyn, but she rejected his advances. Cole and C.R. fell asleep where they were laying on the long side of the sectional couch. Eventually, Jeff, and later Ashlyn, left the room and went to bed.

At that point, the testimony indicated, the TV was on but the living room lights were off. K.S. testified that appellant had moved to the short loveseat part of the couch with her and was sitting with her legs in his lap. According to K.S., appellant started "messing with [her] feet" and then began "rubbing [her] legs," touching them "higher and higher." K.S. told the jury that appellant then unbuttoned her shorts and took both her shorts and underwear off. She said that he got up to turn off the TV, returned to the couch, and got on top of her. K.S. explained that she was on her back, and appellant was laying with his lower body in between her legs. He had not removed his clothing, but his pants were "lowered . . . pulled down a little bit." According to K.S., appellant then engaged in sexual intercourse with her, "sticking his penis in [her] vagina." After less than ten minutes, appellant "finished." K.S. testified that he pulled up his pants, told her not to tell, and threw her shorts and underwear at her. He also covered her with a blanket that was on the back of the couch. K.S. said that she tried to put her underwear back on, but couldn't see in the darkness, so she put them under the couch and just put her shorts on. She then went to sleep there on the couch. Appellant returned to the recliner seat of the couch. K.S. testified that in the morning, she woke up to go to the restroom. She retrieved her underwear from under the couch and went to the

3

bathroom. K.S. described blood in the toilet when she peed.[4] After using the bathroom, K.S. went to C.R.'s bedroom and slept some more. K.S. testified that when she woke up later that morning, she took a shower. She said that while she was in the shower, appellant left the house. The evidence reflected that neither C.R. nor Cole woke up during the encounter between appellant and K.S. When they awoke in the morning, appellant was in the reclining seat of the couch and K.S. was no longer in the room.

The testimony reflected that after breakfast that morning, C.R. noticed that K.S. was "acting different." She explained that when she went into her bedroom and asked K.S. why she was in her bed, K.S. was "kind of being standoffish." C.R. said that she "tried to ask [K.S.] what was wrong" but "[s]he never would tell [her]." After appellant left, C.R. told her mom that something was wrong with K.S. Sheila went to K.S. and asked her if "something bad" happened. Upset and crying, K.S. disclosed to Sheila and C.R. that appellant had had sex with her during the night. According to Sheila's testimony at trial, K.S. indicated that she was unsure if appellant had penetrated her. K.S. did, however, complain to her that she was sore in her vagina.

The evidence demonstrated that in response to K.S.'s disclosure, before contacting K.S.'s mother, Sheila texted appellant. She told him that "we all know what happened last night." She asked if he used a condom and expressed her concerns about K.S. getting pregnant. She also conveyed her dismay at his conduct: "She is 13 [appellant] what in the hell were you thinking." The evidence showed that the following text exchange ensued:

---

[4] The record reflects that K.S. was at the end of her menstrual cycle, experiencing a light blood flow, and had a maxipad in her underwear. However, K.S. testified that she did not believe that the blood in the toilet was from her menstrual flow.

4

| *Appellant* | *Sheila* |
|---|---|
| 💬 What happened | |
| | 💬 Is this [appellant][5] |
| 💬 Yes | |
| | 💬 [K.S.] said you had sex with her |
| | 💬 We'll [sic] I'm waiting |
| 💬 What I remember [is] going in side [sic] the house and sitting on the couch by ashlyn<br><br>I can't talk right now but I will call in a little while | |
| | 💬 We'll [sic] [K.S.] said you had sex with her and now she's hysterical |
| 💬 What the hell I hope not<br><br>I don't remember much of last night | |

In her final text, Sheila told appellant that "[she] need[ed] to know cause [sic] [K.S.] is going to tell her mom and it is gonna [sic] be considered rape[.]"[6]

The evidence reflected that after the text session, Sheila and C.R. took K.S. to her mother, Jennifer. Sheila asked Jennifer to get in the car, and they drove around while K.S. told her mother

---

[5] Sheila testified that she asked this question because sometimes other people had appellant's cell phone.

[6] Approximately 30 minutes after this text session with Sheila, appellant texted a friend about what K.S. disclosed, saying, "I don't know what happened," and "I pray this isn't true."

what happened. According to Sheila, Jennifer "flipped out" and yelled at Sheila to take them home, warning that K.S.'s father, Gary, was "going to kill everybody that was at the barbecue." At K.S.'s house they walked in and K.S. sat on her bed while Jennifer told Gary what happened. Gary went and got his gun, loaded it, and put it on K.S.'s bed. Sheila recounted that both of K.S.'s parents were upset, yelling at K.S. and "hounding [her] pretty bad."[7] They blamed her for not resisting by screaming, yelling, or crying out. Sheila then called the police from K.S.'s house.

K.S. testified that the following day, her parents took her to Walgreens and got her the Plan B, or "morning after," pill to prevent pregnancy. Her mother then took her to the emergency room "to get checked." At the hospital, a sexual assault nurse examiner conducted a sexual assault examination of K.S. The nurser examiner testified that she noted redness to K.S.'s hymen at the 3:00 position, redness to her posterior fourchette at the 6:00 position, and redness to her labia minora from the 3:00 to 9:00 position.[8] The nurse examiner described the redness as "minor acute injur[ies]," meaning the injuries were recent. Further, she indicated that these injuries—past the labia majora, or the outer lips of the female sexual organ, and into the labia minora and to the hymen, which is the collar of tissue that sits at the opening of the vagina—were consistent with penetration of K.S.'s sexual organ.

---

[7] In fact, Sheila testified that she thought they were going to hit K.S.

[8] The record reflects that the nurse examiner did not perform a full internal exam—which involves putting a speculum into the vagina to hold open the vaginal wall so that the examiner can see the cervix—because K.S. "deferred that." K.S. testified that she stopped the exam because it was uncomfortable. She said that her inner thighs "were really sore" and "[she] was very swollen."

6

## DISCUSSION

In six points of error, appellant challenges the sufficiency of the evidence supporting his conviction, complains about improper jury argument by the prosecutor, claims that the trial court erred in denying his motion for new trial as well as by failing to make requested findings of fact and conclusions of law in connection with its ruling on the motion, asserts that error in the jury charge caused him egregious harm, and contends that the trial court erred by admitting the testimony of the State's expert on the dynamics of child sexual abuse.

### Sufficiency of the Evidence

The indictment in this case charged appellant with aggravated sexual assault of a child, alleging, in relevant part, that he

> did then and there intentionally or knowingly cause the penetration of the sexual organ of K.S., a child who was then and there younger than 14 years of age, by the defendant[']s sexual organ[.]

In his first point of error, appellant asserts that the evidence is insufficient to support his conviction for this offense.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S.

7

at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In our sufficiency review we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *See Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally") (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)).

To determine whether the State has met its evidentiary burden of proving a defendant guilty beyond a reasonable doubt, we compare the elements of the offense as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Morgan*, 501 S.W.3d at 89. "A hypothetically correct jury charge is one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Jenkins*, 493 S.W.3d at 599 (quoting *Thomas*, 444 S.W.3d at 8, in turn quoting *Malik*, 953 S.W.2d at 240); *see Morgan*, 501 S.W.3d at 89. The law as authorized by the indictment consists of the statutory elements of the charged offense as modified by the

8

factual details and legal theories contained in the indictment. *Patel v. State*, No. 03-14-00238-CR, 2016 WL 2732230, at *2 (Tex. App.—Austin May 4, 2016, no pet.) (mem. op., not designated for publication); *see Jenkins*, 493 S.W.3d at 599; *Thomas*, 444 S.W.3d at 8.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. art. 38.04; *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). In addition, we must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Cary*, 507 S.W.3d at 757; *Blea*, 483 S.W.3d at 33; *Murray*, 457 S.W.3d at 448–49.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *see Tate v. State*, 500 S.W.3d 410,

413 (Tex. Crim. App. 2016); *Nowlin*, 473 S.W.3d at 317. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317; *Dobbs*, 434 S.W.3d at 170.

In her testimony, K.S. detailed the incident in which she claimed appellant had engaged in sexual intercourse with her. She provided specific facts and sensory details as she recalled them. K.S. described how appellant began rubbing her lower legs and then moved up her legs as he continued touching her. She then recounted that he unbuttoned her shorts and removed her shorts and underwear. She said that appellant got up to turn off the TV and then returned to the couch and got on top of her. She described how he placed his lower body in between her legs, and explained that, although he was still dressed, his pants were "lowered . . . pulled down a little bit." Regarding the sexual act, K.S. testified that appellant "was being forceful" and "was sticking his penis inside of [her] vagina." She said that she expressed pain—"[she] was saying: Ouch."—but that appellant simply said "Take it. Take it. Take it." in a forceful whisper.

A rational jury could find from this testimony that appellant penetrated K.S.'s sexual organ with his sexual organ. Because K.S. was under 17 years of age at the time of the offense, her testimony alone is sufficient proof of the aggravated sexual assault alleged in the indictment. *See* Tex. Code Crim. Proc. art. 38.07(a), (b)(1) (uncorroborated testimony of child victim is sufficient to support conviction for sexual offense if child victim 17 years of age or younger at time of offense); *see also Villarreal v. State*, 470 S.W.3d 168, 170–71 (Tex. App.—Austin 2015, no pet.); *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

In addition to K.S.'s testimony, Sheila testified pursuant to the outcry statute about K.S.'s disclosure of the incident.[9] Sheila said that after C.R. told her that "something was wrong with [K.S.]" she went to her niece and asked her what happened. She recounted that K.S. revealed that "[appellant] had had sex with her." She described K.S.'s demeanor during the disclosure: "she was just crying real hard" and "was having trouble talking." She further testified that K.S. told her that she was sore in her vagina. As with K.S.'s testimony, Sheila's outcry testimony—that K.S. disclosed that appellant had had sex with her—was substantive evidence of the crime, *see Bays v. State*, 396 S.W.3d 580, 582 n.1 (Tex. Crim. App. 2013); *see also Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005) ("[The first adult a child confides in regarding the abuse] may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime."); *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991) ("Under Art. 38.072, by both the terms of the statute and by the legislative history, outcry testimony admitted in compliance with Art. 38.072 is admitted as an exception to the hearsay rule, meaning it is considered substantive evidence, admissible for the truth of the matter asserted in the testimony."), even if uncorroborated, *see Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("Outcry testimony can be legally sufficient evidence to support a conviction. There is

---

[9] Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, concerns the admissibility of certain hearsay evidence in specified crimes against a child younger than 14 years old or a person with disabilities. *See* Tex. Code Crim. Proc. art. 38.072. The Legislature enacted article 38.072 to make admissible the testimony of the first adult in whom a child confides regarding sexual or physical abuse. *Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005). Outcry testimony admitted pursuant to article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Id.*; *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Duran v. State*, 163 S.W.3d 253, 257 (Tex. App.—Fort Worth 2005, no pet.).

11

no requirement that outcry testimony admitted as substantive evidence be corroborated or substantiated by the victim or independent evidence.") (internal citation omitted).[10]

Moreover, while the State has no burden to produce any corroborating or physical evidence, *see Cerda v. State*, No. 03-12-00582-CR, 2014 WL 4179359, at *9 (Tex. App.—Austin Aug. 22, 2014, pet. ref'd) (mem. op., not designated for publication); *Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.), the jury also heard the sexual assault nurse examiner's testimony explaining the findings of the sexual assault exam that she conducted on K.S. The exam revealed acute minor injuries to K.S.'s hymen, posterior fourchette, and labia majora that were consistent with penetration. The evidence of these injuries supports an inference that K.S.'s sexual organ was penetrated when appellant forcefully "[stuck] his penis in [her] vagina," as K.S. described. Thus, the nurse examiner's testimony provided some corroboration of K.S.'s testimony. In addition, the State's expert on child sexual abuse dynamics detailed the phases of abuse, outcry dynamics, and conduct of victims commonly seen in child sexual abuse

---

[10] We acknowledge that in her testimony, Sheila said that when she asked K.S. if appellant had penetrated her, K.S. said (after Sheila explained what penetration meant) that she did not know and that she was sleeping. However, the jury, as the sole judge of credibility and weight to be attached to the testimony of witnesses, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013), was free to accept or reject any or all of Sheila's testimony, *see Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000), and was entitled to resolve evidentiary conflicts, *see Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury was entitled to evaluate Sheila's credibility by comparing this testimony with other evidence, including evidence demonstrating Sheila's concern that K.S. was pregnant as well as K.S.'s testimony on cross examination when she denied saying that she did not know whether appellant penetrated and said that she told her aunt "yes" when she asked if appellant penetrated her.

cases. This testimony, combined with the testimony of other trial witnesses, established several ways that K.S.'s behavior was consistent with that of other child sexual abuse victims.

In his brief, appellant argues that the evidence is insufficient because, he claims, the sexual assault as described by K.S. was physically and factually impossible, K.S.'s testimony was internally inconsistent, and K.S.'s testimony contradicted the testimony of other trial witnesses. Appellant's interpretation of the evidence and testimony, however, simply reflects conflicts in the evidence. These were all matters left to the jury to resolve. Reconciliation of any conflicts or contradictions in the evidence is within the exclusive province of the jury. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Jimenez v. State*, 240 S.W.3d 384, 402 (Tex. App.—Austin 2007, pet. ref'd); *see* Tex. Code Crim. Proc. arts. 36.13, 38.04. The jury is free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). Here, the jury, as the exclusive judge of the facts and sole judge of witness credibility, was entitled to weigh the evidence and resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Blea*, 483 S.W.3d at 33; *Dobbs*, 434 S.W.3d at 170; *Clayton*, 235 S.W.3d at 778. We find no flaw in the jury's resolution of these conflicts against appellant.

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that the evidence was sufficient to allow the jury to reasonably conclude that appellant penetrated K.S.'s sexual organ with his sexual organ as alleged in the indictment. Thus, the evidence is sufficient to support his conviction for aggravated sexual assault of a child. We overrule appellant's first point of error.

## Jury Argument

In his second point of error, appellant asserts that certain portions of the prosecutor's jury argument—which, he complains, conveyed her personal opinions about K.S.'s credibility and appellant's guilt—constituted "plain error."

To preserve error regarding improper jury argument for appellate review, a defendant must object and pursue his objection to an adverse ruling. *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010) (reaffirming that error pertaining to jury argument is waived by failure to make timely and proper objection); *see* Tex. R. App. P. 33.1(a). A defendant must contemporaneously object to the statement, request an instruction that the jury disregard the statement if the objection is sustained, and move for a mistrial if an instruction to disregard is given. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Johnson v. State*, No. 03-12-00006-CR, 2012 WL 1582236, at *7 (Tex. App.—Austin May 4, 2012, no pet.) (mem. op., not designated for publication); *see Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (noting that sequence of "traditional and preferred procedure" is not essential; "[t]he only essential requirement to ensure preservation is a timely, specific, request that is refused by the trial court"). A defendant's failure to object to a jury argument, or failure to pursue an adverse ruling to his objection to the jury argument, forfeits his right to complain about the jury argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Even if the jury argument error was such that it could not be cured by an instruction, a defendant is still required to object and request a mistrial. *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002).

At trial, appellant did not object to any of the prosecutor's statements about which he now complains. Appellant concedes that he failed to object to the complained-of portions of the prosecutor's jury argument but attempts to excuse his failure to object by invoking the federal "plain error" doctrine.[11] "The traditional term in Texas' criminal law that corresponds to 'plain error' is 'fundamental error.'" *Jimenez v. State*, 32 S.W.3d 233, 238 (Tex. Crim. App. 2000). The Court of Criminal Appeals has declined, however, to apply the fundamental error, or "plain error," doctrine to errors in jury argument. On the contrary, the Court of Criminal Appeals has repeatedly emphasized that a defendant must object to preserve a complaint that the State's jury argument was improper. *See Mays v. State*, 318 S.W.3d 368, 394 (Tex. Crim. App. 2010) ("[W]e will not review the propriety of the prosecutor's arguments, as appellant failed to object to those arguments at trial. He has failed to preserve any issue for appeal."); *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) ("Because appellant failed to object to the jury argument, he has forfeited his right to raise the issue on appeal."); *Mathis*, 67 S.W.3d at 926–27 ("Appellant failed to object at trial to the prosecutor's arguments, however, and therefore forfeited his right to complain about this issue on appeal."); *Cockrell*, 933 S.W.2d at 89 ("[W]e hold a defendant's failure to object to a jury

---

[11] The "plain error" doctrine in the federal system, embodied in Rule 52(b) of the Federal Rules of Criminal Procedure, permits an appellate court to recognize a "plain error that affects substantial rights," even if the claim of error was not raised to the district court. *United States v. Marcus*, 560 U.S. 258, 262 (2010); *see* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). A federal appellate court "may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Marcus*, 560 U.S. at 262 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

argument . . . forfeits his right to complain about the argument on appeal."). We decline to depart—and indeed, as an intermediate appellate court, may not depart—from the binding precedent of the Court of Criminal Appeals to adopt the federal "plain error" doctrine in this context.[12] *See, e.g.*, *Conner v. State*, No. 07-11-0165-CR, 2012 WL 263658, at \*1 (Tex. App.—Amarillo Jan. 30, 2012, pet. ref'd) (mem. op., not designated for publication) (declining to ignore holdings of Court of Criminal Appeals regarding preserving error of improper jury argument and apply federal "plain error" doctrine).

Appellant's argument also ignores the classification of rights outlined in *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997), the watershed decision differentiating between rights that are mandatorily enforced, rights subject to waiver, and rights subject to forfeiture, and discussing which rights are subject to procedural default and the general preservation requirement of Texas Rule of Appellate Procedure 33.1. In *Marin*, the Court of Criminal Appeals delineated three distinct categories of rights belonging to litigants: "absolute requirements and prohibitions," which are not optional and can never be waived or forfeited; "waivable rights," which are rights that must be implemented unless expressly waived; and "forfeitable rights," which are rights that must be

---

[12] As an intermediate appellate court, we are obliged to follow the binding precedent of the Court of Criminal Appeals in criminal cases. *See Ex Parte Quyen Trung Ly*, 409 S.W.3d 843, 844 (Tex. App.—Beaumont 2013, no pet.); *Chambless v. State*, 368 S.W.3d 785, 790 (Tex. App.—Austin 2012), *aff'd*, 411 S.W.3d 498 (Tex. Crim. App. 2013); *Ervin v. State*, 331 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *State v. DeLay*, 208 S.W.3d 603, 607 (Tex. App.—Austin 2006), *aff'd sub. nom. State v. Colyandro*, 233 S.W.3d 870 (Tex. Crim. App. 2007); *Gonzales v. State*, 190 S.W.3d 125, 130 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also* Tex. Const. art. V, § 5 (a) (providing that Texas Court of Criminal Appeals is final authority regarding matters of criminal law in Texas).

requested in order to be implemented. *Id.* at 279–80; *see Ex parte Marascio*, 471 S.W.3d 832, 835 (Tex. Crim. App. 2015) (discussing categorization structure outlines in *Marin*); *Ex parte Heilman*, 456 S.W.3d 159, 162 (Tex. Crim. App. 2015) (same). Concerning complaints about improper jury argument, the high court's precedent has clearly established that the right to be free from improper jury argument falls within *Marin's* third category and is therefore subject to forfeiture. *See Mays*, 318 S.W.3d at 394; *Threadgill*, 146 S.W.3d at 670; *Mathis*, 67 S.W.3d at 926–27; *Cockrell*, 933 S.W.2d at 89.

Preservation of error is a systemic requirement on appeal. *Darcy v. State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016); *Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Blackshear v. State*, 385 S.W.3d 589, 590 (Tex. Crim. App. 2012); *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010). Because appellant failed to object at trial, he forfeited his right to complain about improper jury argument on appeal and has waived appellate review of any error associated with the complained-of portions of the prosecutor's argument. Accordingly, we overrule appellant's second point of error.

**Motion for New Trial**

In his third point of error, appellant argues that the trial court erred in denying his motion for new trial based on newly discovered evidence. In his fourth point of error, appellant contends that the trial court erred by not making findings of fact and conclusions of law relating to the court's ruling on the motion, which he requested both orally and in writing. He maintains that this Court should abate this appeal and remand to the trial court for the entry of findings of fact and conclusions

17

of law pursuant to Rule 44.4 of the Texas Rules of Appellant Procedure and *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006).

Thirteen days after appellant was sentenced in open court, appellant filed a timely motion for new trial arguing that the verdict was "contrary to the law and evidence." Attached to the motion was an affidavit from T.S., a classmate of K.S., which indicated that at one point, prior to trial, K.S. had suggested to T.S. that she had lied about her sexual assault allegations against appellant. Sixty days after sentence was imposed, the day before the hearing on the motion for new trial was scheduled, appellant filed a "brief in support of" his motion for new trial, which asserted that T.S.'s testimony was newly discovered evidence that warranted a new trial.

At the hearing on the motion the following day, the State objected, both in writing and in open court, to the trial court's consideration of appellant's claim of newly discovered evidence on the ground that the amendment to the motion for new trial, presented in the supporting brief, was untimely. In response to the State's objection, appellant asserted that the supporting brief "was merely to give the Court the law in support of [his] single witness" and contended that his motion for new trial did contain the claim of newly discovered evidence because it included a summary of T.S.'s affidavit, which was attached to the motion.[13] The trial court overruled the State's objection,

---

[13] The relevant paragraph of the motion contained a one-sentence factual summary of the attached affidavit:

3.    In support of defendant's motion, the following facts outside the record are hereby alleged:

See attached Exhibit A; Wherein T.S. a [f]ifteen year old friend of K.S. has came [sic] forward stating that K.S. told her sometime during her Freshman year in the Fall of 2014 to Spring 2015 that she lied about the allegations she

18

and the hearing proceeded. Appellant called six witnesses in support of his claim of newly discovered evidence, the only ground for new trial addressed at the hearing. The hearing ended without a ruling by the court; appellant requested written findings of fact and conclusions of law "in the event" the trial court denied the motion. Eight days later, 69 days after sentence was imposed, the trial court signed an order overruling the motion for new trial. That same day, appellant filed a written request for findings of fact and conclusions of law "regarding the Court's denial of [appellant's] Motion for New Trial."

A motion for new trial must be filed within 30 days after sentence is imposed or suspended in open court. Tex. R. App. P. 21.4(a); *see State v. Arizmendi*, 519 S.W.3d 143, 150 (Tex. Crim. App. 2017); *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013). The motion can be amended at any time during that 30-day period, but the trial court is barred from considering a ground raised outside the 30-day period if the State properly objects. *Arizmendi*, 519 S.W.3d at 150; *Zalman*, 400 S.W.3d at 593–95; *State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007); *see also* Tex. R. App. P. 21.4(b).

The Court of Criminal Appeals has repeatedly held that "[a]n essential element of [a motion for new trial] is that the matter of error relied upon for a new trial must be specifically set forth therein." *Zalman*, 400 S.W.3d at 593–94 (citing *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993); *Harvey v. State*, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947)). The defendant is required to allege in the motion sufficient grounds to apprise the trial court and the State of why he

---

made in alleging that Justin Riordan had sexually assaulted her.

19

believes he is entitled to a new trial. *Zalman*, 400 S.W.3d at 594 (explaining that motion must contain enough detail to give other party notice of what is being complained of so that it can properly prepare for hearing).

In this case, appellant asserted in his motion for new trial that the verdict was "contrary to the law and the evidence" and asked the trial court to exercise its discretion and grant a new trial "in the interest of justice." The Court of Criminal Appeals has held that an allegation that a verdict is against the law and the evidence raises an evidentiary sufficiency challenge and *only* an evidentiary sufficiency challenge. *Id.* (citing *Bogan v. State*, 180 S.W. 247, 248 (Tex. Crim. App. 1915)). Consequently, appellant's timely filed motion raised the legal claim that the evidence was insufficient to support the guilty verdict, but not any other claim.[14]

The record refutes appellant's contention that his claim of newly discovered evidence was raised in his motion for new trial. While appellant referenced facts in the motion for new trial, those facts did not raise a legal basis for a new trial. At most, the one-sentence factual summary described potential testimony of a presumably absent witness. There are several grounds on which the absence of a witness at trial can form the basis for granting a new trial. *State v. Thomas*, 428 S.W.3d 99, 106

---

[14] We note that "in the interest of justice" is not an independent basis for granting a criminal defendant a new trial. *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014); *Quintero v. State*, 467 S.W.3d 671, 679–680 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *see, e.g.*, *State v. Gomez*, No. 13-14-00585-CR, 2016 WL 744598, at *4–6 (Tex. App.—Corpus Christi Feb. 25, 2016, no pet.) (mem. op., not designated for publication) (agreeing with State's contention that defendant's "in the interest of justice" allegation, standing alone, was not independent legal claim or basis for granting new trial). The Court of Criminal Appeals has held that there must be some legal basis underpinning the grant of a new trial, even when it is sought "in the interest of justice." *See Thomas*, 428 S.W.3d at 105; *Quintero*, 467 S.W.3d 679–80; *see also State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007).

(Tex. Crim. App. 2014). For example, the absence of witness testimony may support a *Brady* claim, *id.*; *see Brady v. Maryland*, 373 U.S. 83 (1963); *Pena v. State*, 353 S.W.3d 797 (Tex. Crim. App. 2011), a claim of actual innocence, *Thomas*, 428 S.W.3d at 106; *see Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996), a claim of newly discovered evidence, *Thomas*, 428 S.W.3d at 106; *see Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002), as well as a claim of ineffective assistance of counsel, *Thomas*, 428 S.W.3d at 106; *see Strickland v. Washington*, 466 U.S. 668 (1984); *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Appellant did not articulate the legal claim for relief in his motion that might find support in the alleged facts or the attached affidavit. *See Arizmendi*, 519 S.W.3d at 161 (Newell, J., concurring). The facts recited in the motion for new trial do not support the legal claim for relief made in the motion. *See id.*

Moreover, even if the claim of newly discovered evidence can be gleaned from the attached affidavit of T.S. as the legal basis for relief (and we do not believe that it can), assertions in the affidavit do not suffice to properly raise the legal claim of newly discovered evidence. The motion for new trial must set forth distinctly each ground—it is not enough that the ground is set forth in an affidavit filed with the motion; it must also be in the motion itself. *See Trout v. State*, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985) (holding that ground must be mentioned in motion for new trial; it is not sufficient notice to merely supply supporting affidavits); *see also* 43A George Dix & John Schmolesky, Texas Practice Series: Criminal Practice and Procedure § 50:8 (3d ed. 2011).

Here, appellant's timely filed motion for new trial raised only one ground: the verdict was contrary to the law and the evidence. The claim of newly discovered evidence was not contained within the timely motion but was raised only in the supporting brief that was filed well

21

outside the 30-day limit. Thus, the supporting brief, which raised the matter after the 30-day deadline, constituted an untimely amendment to the motion for new trial. The State timely objected to consideration of the untimely raised ground.

The Court of Criminal Appeals has explicitly held that it is error for the trial court to rule on an untimely amendment over a proper objection. *Zalman*, 400 S.W.3d at 595; *Moore*, 225 S.W.3d, at 570. Consequently, because the claim of newly discovered evidence was not properly presented by the motion for new trial but only in the untimely amendment of the supporting brief, the trial court abused its discretion in overruling the State's objection, conducting the hearing on the untimely raised ground, and considering appellant's claim of newly discovered evidence over the State's objection. *See Zalman*, 400 S.W.3d at 595; *Moore*, 225 S.W.3d at 569–70; *see, e.g.*, *Arizmendi*, 519 S.W.3d at 150–51 (trial court was barred from considering ineffective assistance claim that was not raised in motion for new trial but only at hearing on motion for new trial conducted outside 30-day period and State objected that ineffective assistance claim was untimely); *Zalman*, 400 S.W.3d at 594–95 (holding trial court abused its discretion in granting new trial because "memoranda of law" was untimely and did not support legal claim presented in motion, and thus trial court was not allowed to consider arguments contained in late-filed "memorandum of law" or asserted at new-trial hearing on motion over State's objection); *Trout*, 702 S.W.2d at 619–20 (holding unalleged act of jury misconduct was not properly presented by motion for new trial and should not have been entertained by trial court over State's objection at hearing on motion for new trial); *Joseph v. State*, No. 03-05-00433-CR, 2007 WL 283030, at *1–2 (Tex. App.—Austin Jan. 31, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that claim of

22

ineffective assistance of counsel should not have been entertained by trial court at new-trial hearing over State's objection because claim was not presented by motion for new trial but only raised in untimely-filed "evidentiary addendum").

Appellant did not include his claim of newly discovered evidence as a basis for a new trial in his motion for new trial. The State timely objected when he raised that claim in his supporting brief, filed after the 30-day amendment deadline. Therefore, the trial court was prohibited from considering the untimely raised and objected to claim of newly discovered evidence. Accordingly, we overrule appellant's third point of error complaining that the trial court erred in denying his motion for new trial on that ground.[15] *See Joseph*, 2007 WL 283030, at *1 ("An untimely motion or amended motion for new trial is a nullity and cannot form the basis for points of error on appeal."); *cf. Moore*, 225 S.W.3d at 570 (concluding that "[s]hould the trial court refuse to limit its ruling to the original motion [for new trial] and grant relief on the basis of the amendment over the State's objection, the appellate court should consider only the validity of the original and any timely amended motion for new trial, and should reverse any ruling granting a new trial based upon matters raised for the first time in an untimely amendment").

Further, because the trial court improperly considered appellant's untimely raised and objected to claim of newly discovered evidence at the hearing, the trial court's failure to make the

---

[15] During the hearing on the motion for new trial, appellant presented the testimony of six witnesses in an attempt to demonstrate that T.S.'s testimony was newly discovered evidence. He did not, at any point, advance the claim raised in his motion for new trial—that the evidence was insufficient to support the verdict. We note here that, because the evidence was sufficient to support the guilty verdict, as we concluded in overruling appellant's first point of error, the trial court did not abuse its discretion in denying the motion for new trial based on the sufficiency ground.

23

requested findings of fact and conclusions of law associated with its ruling on that ground is irrelevant. *See State v. Provost*, 205 S.W.3d 561, 566 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[B]ecause the trial court had no authority to grant a new trial on a ground not raised by the defendant in his motion (ineffective assistance of counsel), its findings of fact and conclusions of law setting forth the ineffective assistance ground are not relevant."). Therefore, we overrule appellant's fourth point of error.

**Jury Charge Error**

In his fifth point of error, appellant contends that he suffered egregious harm from the trial court's erroneous jury charge instruction regarding the presumption of innocence.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). Appellant concedes that he did not object at trial to the instruction given in the jury charge regarding the presumption of innocence. Thus, because the jury charge error was not preserved, the error, if any, requires reversal only if it was "fundamental" in that it was "egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza*, 686 S.W.2d at 171.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) ("Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense."). The court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Taylor*, 332 S.W.3d at 488 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

Under the Due Process Clause of the Fourteenth Amendment, an accused in state court has the right to the "presumption of innocence"—the right to be free from criminal conviction unless the State can prove guilt beyond a reasonable doubt by probative evidence adduced at trial. *Miles v. State*, 204 S.W.3d 822, 825 (Tex. Crim. App. 2006) (citing *Taylor v. Kentucky*, 436 U.S. 478, 483 n.12, 485–86 (1978)); *Madrid v. State*, 595 S.W.2d 106, 110 (Tex. Crim. App. 1979); *Jessop v. State*, 368 S.W.3d 653, 673 (Tex. App.—Austin 2012, no pet.). The Texas Legislature has codified the presumption of innocence in the Code of Criminal Procedure and the Penal Code .[16]

---

[16] Specifically, article 38.03 of the Code of Criminal Procedure, entitled "Presumption of Innocence," provides:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

Tex. Code Crim. Proc. art. 38.03.

There is, however, no constitutional requirement that an instruction on the presumption of innocence be given in every criminal trial. *Kentucky v. Whorton*, 441 U.S. 786, 789 (1979); *Stewart v. State*, 162 S.W.3d 269, 275 (Tex. App.—San Antonio 2005, pet. ref'd); *see Delo v. Lashley*, 507 U.S. 272, 278 (1993) (instruction is constitutionally required only when there is genuine danger that jury will convict based on something other than lawful evidence proved beyond reasonable doubt); *see also* 24 Tex. Jur. 3d Criminal Procedure: Trial §§ 348, 350. Rather, the presumption of innocence is a doctrine that allocates the burden of proof in criminal trials. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *Taylor*, 436 U.S. at 485; *Jessop*, 368 S.W.3d at 673. The phrase is "an inaccurate, shorthand description of the right of the accused to 'remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion.'" *Bell*, 441 U.S. at 533 (quoting *Taylor*, 436 U.S. at 483 n.12); *see Miles*, 204 S.W.3d at 825; *Jessop*, 368 S.W.3d at 673; *see also Presumption of Innocence*, BLACK'S LAW DICTIONARY (10th ed. 2014). "The principal inaccuracy is the fact that it is not technically a 'presumption'—a mandatory inference drawn from a fact in evidence.[17] Instead, it is better characterized as an

Likewise, section 2.01 of the Penal Code, entitled "Proof Beyond a Reasonable Doubt," provides:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

Tex. Penal Code § 2.01.

[17] Normally, a presumption is a legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts. *See Presumption*, BLACK'S LAW DICTIONARY (10th ed. 2014). A presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption. *Id.*

'assumption' that is indulged in the absence of contrary evidence." *Taylor*, 436 U.S. at 483 n.12; *see Madrid*, 595 S.W.2d at 110 ("The so-called presumption of innocence is not an inference based on proven fact; rather, it is an assignment of a burden of proof prior to trial based on the substantive law requiring the State to prove guilt beyond a reasonable doubt.").

Moreover, the presumption of innocence has no correlation with actual innocence. *See Zimmerman v. State*, 860 S.W.2d 89, 97 (Tex. Crim. App. 1993), *judgment vacated on other grounds*, 510 U.S. 938 (1993) ("[T]he presumption of innocence does not carry with it the connotation that a defendant is in fact innocent."); *see also Jessop*, 368 S.W.3d at 673; *Johnson v. State*, 263 S.W.3d 405, 417 (Tex. App.—Waco 2008, pet. ref'd); *Miles v. State*, 154 S.W.3d 679, 683 (Tex. App.—Houston [14th Dist.] 2004) (Hudson, J., concurring), *aff'd*, 204 S.W.3d 822 (Tex. Crim. App. 2006). Rather, the presumption of innocence is merely an expression regarding the State's evidentiary burden and not a suggestion or intimation of the defendant's actual innocence. *See Madrid*, 595 S.W.2d at 110; *Miles*, 154 S.W.3d at 684 (Hudson, J., concurring). The presumption serves as a reminder to the jury of the State's burden to prove its case and as an admonishment to consider nothing but the evidence adduced at trial in passing on the defendant's guilt. *Bell*, 441 U.S. at 533; *Miles*, 204 S.W.3d at 825; *Jessop*, 368 S.W.3d at 674. "When a jury is told of the presumption, it is told, in effect, to judge an accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody." *Miles*, 204 S.W.3d at 825.

Accordingly, the trial court should inform the jury about the presumption of innocence, *Ferguson v. State*, 335 S.W.3d 676, 685 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see*

*Bennett v. State*, 396 S.W.2d 875 (Tex. Crim. App. 1965) ("'The presumption of innocence is the most valuable of the defendant's rights, and it seems that a charge upon this subject is essential in every criminal case.'") (quoting *Sessums v. State*, 237 S.W.2d 629, 630 (Tex. Crim. App. 1951)), and the failure to do so is generally is error, *Bland v. State*, 398 S.W.2d 775 (Tex. Crim. App. 1966); *Green v. State*, 161 S.W.2d 114, 116 (Tex. Crim. App. 1942); *Roberts v. State*, 239 S.W. 960, 961 (Tex. Crim. App. 1922). *See also* 24 Tex. Jur. 3d Criminal Procedure: Trial § 350.

In the court's jury charge, the trial court instructed the jury about the presumption of innocence as follows:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, indicted for or otherwise charged with the offense gives rise to no inference of guilt on such person's trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.

> Therefore, in this case, the defendant is presumed to be innocent until each element of the offense with which the defendant has been charged is proved beyond a reasonable doubt, and if there is a reasonable doubt in your minds as to such matter, you must acquit the defendant.

Appellant contends that the trial court improperly instructed the jury on the presumption of innocence because the court used the word "until" rather than "unless" in the second paragraph. He argues that in doing so "the trial court affirmatively misstated the presumption of innocence."

The question we face here is whether the charge adequately stated the "law applicable to the case" regarding the presumption of innocence. We conclude that it does. The first paragraph

of the court's instruction regarding the presumption of innocence recited, almost verbatim, the

presumption of innocence as codified in the Code of Criminal Procedure and the Penal Code.[18] We

fail to discern how the use of "until" in the following paragraph detracts from or alters the instruction

of the presumption of innocence as codified. Nor can we conclude that the use of "until" misstates

the law as to the presumption. While "until" is generally used in the context of time[19] and "unless"

is generally used in the context of a precondition,[20] both have conditional connotations. *See*

http://www.diffen.com/difference/Unless_vs_Until; http://www.differencebetween.net/language/

grammar-language/difference-between-until-and-unless/. The use of "until" in the instruction here

is consistent with the fundamental principle that a person may be convicted of a crime only when

the State meets is burden of proving each element of the offense beyond a reasonable doubt, without

any burden placed on the accused to prove innocence.

In fact, historically, the presumption of innocence was phrased in terms of a criminal

defendant being presumed innocent *until* evidence established his guilt. When first enacted in 1965,

article 38.03 of the Code of Criminal Procedure provided: "The defendant in a criminal case is

presumed to be innocent *until* his guilt is established by legal evidence beyond a reasonable

---

[18] The only variation is that instead of referencing an inference of guilt "at his trial," the charge instruction references an inference of guilt "on such person's trial."

[19] *See, e.g.*, https://en.oxforddictionaries.com/definition/until (defining until as "up to (the point in time or the event mentioned)"); https://www.collinsdictionary.com/dictionary/english/until (defining until as "up to (a time) that"); https://www.merriam-webster.com/dictionary/until (defining until as "up to the time that; up to such time as").

[20] *See, e.g.*, https://en.oxforddictionaries.com/definition/unless (defining unless as "except if"); https://www.merriam-webster.com/dictionary/unless (defining unless as "except on the condition that"); https://www.collinsdictionary.com/dictionary/english/unless (defining unless as "except on the condition that; except under the circumstances that").

doubt, and in case of reasonable doubt as to his guilt he is entitled to be acquitted." *See* Act of May 19, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 319, 466 (amended 1981) (current version at Tex. Code. Crim. Proc. art. 38.03) (emphasis added). This was the same language that had previously been used in article 705 of the 1925 Code of Criminal Procedure, article 785 of the 1911 Code of Criminal Procedure, article 765 of the 1895 Code of Criminal Procedure, and article 727 of the 1879 Code of Criminal Procedure. *See* 1925 Tex. Crim. Stat. 705; 1911 Tex. Crim. Stat. 785; 1895 Tex. Crim. Stat. 765; 1879 Tex. Crim. Stat. 727. Only in 1981 did the Legislature change the statutory language to use the word unless:

> All persons are presumed to be innocent and no person may be convicted of an offense *unless* each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

*See* Act of May 31, 1981, 67th Leg., R.S., ch. 540, § 1, 1981 Tex. Gen. Laws 2247 (codified at Tex. Code. Crim. Proc. art. 38.03) (emphasis added).

Similarly, early Penal Code provisions regarding the burden of proof provided that a defendant was presumed innocent *until* the burden of proof was satisfied. Article 11 of the 1879 Penal Code provided: "Every person accused of an offense shall be presumed to be innocent *until* his guilt is established to the satisfaction of those whose province it is to try him." *See* 1879 Tex. Crim. Stat. 11 (emphasis added). This same language was repeated in the 1895 Penal Code and the 1911 Penal Code. *See* 1895 Tex. Crim. Stat. 11; 1911 Tex. Crim. Stat. 11. Subsequently, article 9 of the 1925 Penal Code used language consistent with those articles: "Every person accused of an offense shall be presumed to be innocent *until* his guilt is established by legal

30

evidence beyond a reasonable doubt." 1925 Tex. Crim. Stat. 9 (emphasis added). Only when section 2.01 was enacted in 1973, when the new Penal Code was adopted, did the statute use the word unless: "All persons are presumed to be innocent and no person may be convicted of an offense *unless* each element of the offense is proved beyond a reasonable doubt." *See* Act of May 23, 1973, 63d Leg., R.S., ch 399, § 1, 1973 Tex. Gen. Laws 883, 889 (codified at Tex. Penal Code § 2.01) (emphasis added).

Appellant's argument, focusing on the use of "until" rather than "unless" in the second paragraph of the court's instruction regarding the presumption of innocence, makes a distinction without a material difference. Both words accurately reflect the fundamental principle embodied in the presumption of innocence: the State has the burden to prove guilt, while the defendant has no burden to prove innocence; and guilt must be established by evidence adduced at trial, not suspicions that may arise from merely being a criminal defendant. The words are often used interchangeably, and both recent and historic opinions use "until" when discussing the presumption. *See, e.g.*, *Kaley v. United States*, 134 S. Ct. 1090, 1114 (2014) (Roberts, C.J., dissenting) ("A person accused by the United States of committing a crime is presumed innocent until proven guilty beyond a reasonable doubt."); *In re Allen*, 462 S.W.3d 47, 65 (Tex. Crim. App. 2015), *abrogated by Petetan v. State*, No. AP-77,038, 2017 WL 915530 (Tex. Crim. App. Mar. 8, 2017) (Alcala, J., dissenting) (referring to "[t]he constitutional principle that a defendant be presumed innocent until proven guilty"); *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998) (concluding that special instruction on alibi constitutes unwarranted comment on weight of evidence by trial court because "an alibi is sufficiently embraced in a general charge to the jury that

31

the defendant is presumed innocent until he or she is proven guilty beyond a reasonable doubt"); *Hill v. State*, 955 S.W.2d 96, 100 (Tex. Crim. App. 1997) (declining to assign "fault" in bail bond forfeiture case for principal's failure to appear due to incarceration when principal had not yet been tried and convicted because "an accused is presumed innocent until proven guilty and therefore his alleged actions in committing the crime cannot serve as a basis for finding 'fault'"); *Harris v. State*, 198 S.W.2d 1020, 1021 (Tex. Crim. App. 1946) ("It appears from the record before us that the trial court in [its] charge failed to instruct the jury that every defendant in a criminal case is presumed to be innocent until his guilt is established beyond a reasonable doubt."); *Dominguez v. State*, 147 S.W.2d 480, 482 (Tex. Crim. App. 1941) ("The court is required by law to fully instruct the jury as to the law applicable to the case. Obviously, under the facts above stated, appellant was entitled to have the jury told that every defendant in a criminal case is presumed to be innocent until his guilt is established by competent evidence beyond a reasonable doubt."); *McGrew v. State*, 143 S.W.2d 946 (Tex. Crim. App. 1940) ("In all cases the defendant is presumed to be innocent until the jury has concluded his guilt from the facts of the case.").

In the instruction at issue here, the trial court provided an accurate and thorough explanation of the presumption of innocence and what it means in a court of law. Thus, the jury charge contained no error regarding the instruction on the presumption of innocence. Accordingly, we overrule appellant's fifth point of error.[21]

---

[21] Finding no error in the jury charge, we need not reach appellant's claim that he suffered egregious harm. *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013); *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009).

## Expert Testimony

At trial, the State offered the testimony of Yvonne D. Garcia, a licensed professional counselor, as an expert regarding the dynamics of child sexual abuse. In his final point of error, appellant asserts that the trial court erred by allowing her to testify because her testimony was "irrelevant, unreliable, and highly prejudicial," amounted to an improper opinion on K.S.'s credibility, and amounted to "bolstering."[22]

Prior to Garcia's testimony at trial, outside the presence of the jury, the court inquired about the State's purpose in offering her testimony. In response, the prosecutor stated,

> Your Honor, this witness won't be a -- a witness who counseled this child. It would be an expert capacity on dynamics of child sexual abuse, questions about disclosure of abuse, emotional impact of disclosure of abuse, timing, you know, children don't typically immediately disclose abuse, why not, what's going on in their head. Just the factors and dynamics of child sexual abuse, Your Honor.

Defense counsel replied to the prosecutor's recitation of the proffered purpose of the testimony, expressing several concerns:

> Judge, if it may -- if I may, it came to my attention this morning that Ms. Garcia has been given a copy of all the reports, a copy of the Hope House interview, a copy of the SANE exam. So that's where I have a real problem, because I feel we're going to get into her invading the province of the jury, getting into whether or not that witness is credible, is it consistent with the outcry of sexual abuse, et cetera.

---

[22] In the "Issues Presented" section of his brief, appellant lists two points of error—six and seven—concerning the admission of Garcia's expert testimony. However, in the table of contents and, more importantly, in the argument section of his brief, appellant presents all of his complaints concerning the admission of Garcia's testimony together in one multifarious point of error. Following appellant's organization, we address all the complaints together here as one point of error.

33

I don't think she's in any way qualified to do that. I think it's highly prejudicial. And I have got previous transcript testimony from Ms. Garcia. And so, when she was listed as an expert, say, in the dynamics of sexual abuse, at that point I assumed it was going to be some generalized questions.

I have some real concerns with regards to her reviewing this entire case file. And then I have concerns with the fact she only reviewed a portion of it. She didn't review the actual audiotapes. And she didn't listened [sic] to the interview of the child with Ibarra. And she didn't listen to the testimony. And about making any kind of description of -- that the child is credible or truthful, et cetera.

The trial court sought clarification from the State regarding defense counsel's concerns, and the prosecutor explained,

Judge, I don't intend to ask Ms. Garcia her opinion as to the child's character for truthfulness or reputation for, you know, credibility questions. I intend to ask dynamics of child sexual abuse. And in this context, you know, why wouldn't you yell out during an incident during an abuse episode, why -- why would you wait to disclose till the next day?

And so it will not ultimately deal with our facts, necessarily. Generally speaking, I'll be asking her about dynamics of child sexual abuse.

After the clarification, the trial court then sought a response from appellant's counsel, who responded:

Judge, and once again, I think on that part, if that's all we're going to do is just the general dynamics of sexual abuse, I would still like to have a Daubert hearing on her qualifications.

The court then conducted a hearing pursuant to Rule 702 of the Texas Rules of Evidence, which governs testimony by expert witnesses. *See* Tex. R. Evid. 702. At the conclusion of the hearing, the court ruled that

34

the witness qualifies as an expert through knowledge, skill, experience, training and education; . . . the subject matter of the dynamics of sexual disclosure are [sic] appropriate for an expert witness to testify; and . . . admitting the evidence will assist the trier of fact in this case.

Appellant did not object to the court's ruling.

During Garcia's testimony before the jury, when the prosecutor asked Garcia to "give [the jury] some idea of the dynamics involved in child sexual abuse," appellant objected "with regards to going outside the scope of what we said." The trial court impliedly overruled the objection, indicating that the question was within the bounds and stating that the prosecutor "may continue." Further objections appellant raised during Garcia's testimony included objections to "narrative response," "leading the witness," and a non-responsive answer.

Before admitting expert testimony under evidence Rule 702, the trial court should determine that the expert is qualified, the opinion is reliable, and the evidence is relevant. *See* Tex. R. Evid. 702; *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006); *Jessop*, 368 S.W.3d at 688; *see also Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). These three requirements—qualification, reliability, and relevance—raise distinct questions and issues. *Jessop*, 368 S.W.3d at 688–89; *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *see Vela*, 209 S.W.3d at 131. Accordingly, a party may challenge expert testimony on at least three specific grounds. *Jessop*, 368 S.W.3d at 689. First, a party may allege that the witness does not qualify as an expert because the witness lacks the requisite knowledge, skill, experience, training, or education in the subject matter of his testimony. *Vela*, 209 S.W.3d at 131; *Jessop*, 368 S.W.3d at 689; *see* Tex. R. Evid. 702. Second, a party may allege that the subject matter of the

35

testimony is inappropriate because it is unreliable. *Vela*, 209 S.W.3d at 131, 133–34; *Jessop*, 368 S.W.3d at 689; *see* Tex. R. Evid. 705(c); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Third, a party may allege that the testimony will not assist the fact finder in deciding the case. *Vela*, 209 S.W.3d at 131; *Jessop*, 368 S.W.3d at 689; *see* Tex. R. Evid. 401, 702. Because these three requirements raise distinct questions and issues, an objection based on one of these requirements does not preserve error as to another. *Salinas v. State*, 426 S.W.3d 318, 323 (Tex. App.—Houston [14th Dist.] 2014), *rev'd on other grounds*, 464 S.W.3d 363 (Tex. Crim. App. 2015); *Jessop*, 368 S.W.3d at 688–89; *Shaw*, 329 S.W.3d at 655; *see Vela*, 209 S.W.3d at 131; *see, e.g.*, *Turner v. State*, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding that objection based on expert's qualifications did not preserve reliability issue).

Moreover, to preserve error, generally, a party must timely object and state the grounds for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *see Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). The objection must be sufficiently clear to give the judge and opposing counsel an opportunity to address and, if necessary, correct the purported error. *Thomas*, 505 S.W.3d at 924; *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *see also Smith v. State*, 499 S.W.3d 1, 7–8 (Tex. Crim. App. 2016). In addition, if a trial objection does not comport with arguments on appeal, error has not been preserved. *Thomas*, 505 S.W.3d at 924; *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); *see also Yazdchi*, 428 S.W.3d at 844.

A review of the record here reflects that appellant did not object to Garcia's qualifications as an expert, the reliability of her opinions, or the relevance of her testimony in this case. Appellant simply expressed concerns about the scope of Garcia's testimony and her qualifications and requested a hearing on the matter of her qualifications. The trial court granted the request and conducted the hearing. At the conclusion of the hearing, appellant made no objections to the proffered testimony. Nor did he object to the trial court's ruling concluding that Garcia was qualified, that her opinions were reliable, and that the evidence was relevant. Yet, on appeal, appellant contends that the trial court abused its discretion in admitting Garcia's testimony because it "was both unreliable and irrelevant."[23] However, appellant never complained about the reliability or relevance of Garcia's testimony at trial—during either the 702 hearing or her testimony before the jury. In no way did he inform the trial court or the State that he was asserting that Garcia's testimony should be excluded because it was unreliable or not relevant. He raises these concerns for the first time on appeal. Accordingly, appellant has failed to preserve his reliability and relevance complaints for appellate review. *See* Tex. R. App. P. 33.1(a); *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

Appellant also argues in his sixth point of error that Garcia's testimony should have been excluded under Rule 403 of the Texas Rules of Evidence, asserting that the testimony was unfairly prejudicial because it was "irrelevant, confusing, and emotionally charged." *See* Tex. R. Evid. 403 (allowing exclusion of relevant evidence when its probative value is "substantially outweighed" by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay,

---

[23] In his brief, appellant "does not dispute Ms. Garcia's qualifications."

37

or needlessly presenting cumulative evidence"). Once again, however, this complaint was not raised to the trial court. Appellant did not object to Garcia's testimony on the ground that it was prejudicial under Rule 403, even though defense counsel used the words "highly prejudicial" twice in articulating her concerns about Garcia's testimony. Counsel first used the phrase in expressing her concerns about Garcia's qualifications before requesting the 702 hearing. However, in context, the use of that phase indicated that counsel considered the testimony "highly prejudicial" because counsel believed—prior to the testimony presented at the 702 hearing—that the testimony would "invad[e] the province of the jury" and "she's [not] in any way qualified to do that." This complaint did not inform the trial court, or the State, that Garcia's testimony should have been excluded under Rule 403 because the danger of unfair prejudice substantially outweighed the probative value of her testimony. Defense counsel again use the phrase during the 702 hearing when the State interrupted counsel's cross examination of Garcia asserting that counsel's questions went beyond the scope of the hearing of "making sure [Garcia] was qualified as an expert." In response, defense counsel explained that

> [she is] going to go into the fact that [she] believe[d] this testimony is highly prejudicial for the jury. And [she] believe[d] that basically Ms. Garcia can testify that any behavior is consistent with sexual assault. There's any behavior that any child has after any alleged sexual assault that is going to be consistent with sexual assault.

To the extent that this might possibly be construed as asserting a Rule 403 objection, we note that the trial court's response was, "I guess I'm missing your point, [Defense Counsel]." Thus, the record does not reflect that the court understood appellant to be challenging the admission of Garcia's

38

testimony under Rule 403. Further, when counsel responded to explain her questioning to the court, the court indicated that such questions would be "relevant to this hearing." The trial court did not, however, at any point make a ruling regarding the alleged prejudice of Garcia's testimony in the context of a Rule 403 objection. To preserve error, a party must secure an adverse ruling. Tex. R. App. P. 33.1(a)(2); *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006); *see Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). The record here reflects that appellant has failed to preserve his Rule 403 complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

Also in his sixth point of error, appellant asserts that Garcia's testimony "amounted to an opinion on K.S.'s credibility and truthfulness, and the truthfulness of a class of persons which included K.S." Appellant is correct that any testimony by Garcia reflecting her opinion that K.S. was telling the truth, that child victims are generally truthful, or that K.S.'s allegations were true would be inadmissible. *See Lopez v. State*, 343 S.W.3d 137, 140–41 (Tex. Crim. App. 2011) ("Direct opinion testimony about the truthfulness of another witness, without prior impeachment, is inadmissible."); *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993) (State may not elicit expert testimony that particular child is telling truth, or that child complainants as class are worthy of belief); *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (expert may not offer opinion on truthfulness of child complainant's allegations). However, the record reflects only that appellant expressed concerns about the scope of Garcia's testimony—that it *might* encompass witness

credibility—before the hearing.[24] At the conclusion of the hearing, after hearing a proffer of Garcia's opinions, appellant did not object that Garcia's testimony improperly commented on witness credibility. Furthermore, appellant did not object to any portions of Garcia's testimony before the jury on the ground that it constituted an impermissible opinion about K.S.'s credibility or truthfulness or the truthfulness of children as a class of persons. Accordingly, appellant has failed to preserve this complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

Finally, appellant asserts that Garcia's testimony "amounted to bolstering." Under case law predating the Rules of Evidence, "bolstering" occurred when one item of evidence was improperly used by a party solely to add credence or weight to earlier, unimpeached evidence offered by the same party. *See Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993). Without deciding whether "bolstering" remains a proper objection under our rules,[25] we note that the record

---

[24] Specifically, defense counsel expressed her concern that "we're going to get into her invading the province of the jury, getting into whether or not that witness is credible," and "about making any kind of description of -- that the child is credible or truthful, et. cetera." In response, the prosecutor indicated that "[she didn't] intend to ask Ms. Garcia her opinion as to the child's character for truthfulness or reputation for, you know, credibility questions." At best, the expression of counsel's concern during this exchange could be construed as a motion in limine. A motion in limine, however, does not preserve error. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial. *Fuller*, 253 S.W.3d at 232.

[25] As this Court has noted in previous opinions, there is some question as to whether a "bolstering" objection preserves error. *See Alba v. State*, No. 03-13-00345-CR, 2014 WL 5802294, at *7 (Tex. App.—Austin Nov. 7, 2014, no pet.) (mem. op., not designated for publication); *Lubojasky v. State*, No. 03-10-00780-CR, 2012 WL 5192919, at *15 n.13 (Tex. App.—Austin Oct. 19, 2012, pet. ref'd) (mem. op., not designated for publication); *Muniz-Luna v. State*, No. 03-09-00266-CR, 2010 WL 3810820, at *3 n.4 (Tex. App.—Austin Sept. 30, 2010, pet. ref'd) (mem. op., not designated for publication); *Biddy v. State*, No. 03-01-00182-CR, 2002 WL 533652,

reflects that at trial appellant did not, at any time, object to Garcia's testimony on the ground that it constituted improper bolstering. He raises this concern for the first time on appeal. Thus, as to his complaint concerning the bolstering effect of Garcia's testimony, appellant has failed to preserve this complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

While no "magic words" or cite to specific statutes or rules is required to preserve a complaint for appeal, a party must convey the substance of the complaint to the trial court clearly enough "to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error." *Pena*, 353 S.W.3d at 807 (citing *Ford*, 305 S.W.3d at 533); *see Ex parte Marascio*, 471 S.W.3d at 842. Further, although "'[e]rror preservation . . . is not an inflexible concept,' and the application of error preservation rules should not be mechanically applied," *Thomas*, 505 S.W.3d at 924 (quoting *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013)), the record must make it clear that both the trial court and the opposing party understood the legal basis for the complaint, *Thomas*, 408 S.W.3d at 884; *see Pena*, 353 S.W.3d at 807. We

at *2–3 (Tex. App.—Austin Apr. 11, 2002, no pet.) (mem. op., not designated for publication). We recognize that while "bolstering" was a proper objection in Texas courts prior to the adoption of the Rules of Evidence, the rules themselves contain no specific provision regarding bolstering. *See Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring) (arguing that bolstering objection should no longer be recognized, because "an objection that certain evidence is 'bolstering' in no way invokes the Rules or informs the trial court of the basis for exclusion under the Rules"); *see also Rivas v. State*, 275 S.W.3d 880, 886, 887 (Tex. Crim. App. 2009) (explaining that "[a] fundamental problem with an objection to 'bolstering' is its inherent ambiguity," as it existed prior to adoption of Rules of Evidence and "appears to have roots in several evidentiary rules" and observing that "[m]any appellate courts have cited the *Cohn* concurrence as authority to abandon 'bolstering' as a valid objection to preserve error for review"). However, given our disposition of this issue, we need not address the continuing vitality of a "bolstering" complaint in Texas.

cannot conclude from this record that the concerns about the admission of Garcia's testimony that appellant communicated to the trial court adequately expressed—such that both the trial court and the State understood—the legal bases for exclusion that appellant now raises on appeal. Consequently, under the circumstances reflected by this record, appellant has failed to preserve error regarding the admission of Garcia's testimony and has forfeited the right to raise these various complaints on appeal. *See* Tex. R. App. P. 33.1(a); *Thomas*, 505 S.W.3d at 924; *Yazdchi*, 428 S.W.3d at 844.

Once again, preservation of error is a systemic requirement on appeal, *Darcy*, 488 S.W.3d at 327; *Bekendam*, 441 S.W.3d at 299, and a reviewing court should not address the merits of an issue that has not been preserved for appeal, *Blackshear*, 385 S.W.3d at 590; *Wilson*, 311 S.W.3d at 473–74. Accordingly, we overrule appellant's sixth point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Pemberton, and Goodwin

Affirmed

Filed: August 4, 2017

Do Not Publish

42